UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
In re:                                                           :
                                                                 :
                                                                 :   Case No. 7:18-mc-00268 (NSR)
DMCA Section 512(h) Subpoena to                                  :
YOUTUBE (GOOGLE, INC.)                                           :
                                                                 :
                                                                 :
---------------------------------------------------------------- x


**DECLARATION OF PAUL D. POLIDORO IN OPPOSITION
TO MOTION TO QUASH SUBPOENA AND TO PROCEED ANONYMOUSLY**

31653/000/3577210

**PAUL D. POLIDORO**, pursuant to 28 U.S.C. §1746, hereby declares as follows:

1. I am Associate General Counsel of Watch Tower Bible and Tract Society of Pennsylvania ("WT"). As such, I am fully familiar with the facts as set forth herein based upon my personal knowledge and review of WT's records and other documents.

2. I submit this declaration in support of WT's opposition to Movant John Doe's ("Doe") motion for an Order, pursuant to Fed. R. Civ. P. 45(d)(3), quashing the subpoena issued in this matter on June 20, 2018, or in the alternative granting Doe leave to proceed anonymously.

3. WT is a non-profit corporation that is responsible for the creation, publication and protection of original works of authorship—including books, magazines, music, visual art and videos—that support the work of Jehovah's Witnesses.

4. Much of the original content created by WT is published and distributed pursuant to license by third party Watch Tower Bible and Tract Society of New York, including via the website at www.jw.org (the "JW Website"). Attached hereto as **Exhibit A** are true and correct copies of screenshots from the JW Website featuring original content created by WT.

5. Between August 2017 and January 2018, WT created the following four original audio-visual works, each of which is registered with the U.S. Copyright Office:

| Title | Current Location on the JW Website | Copyright Registration No. | Registration Date |
|---|---|---|---|
| Never Alone | https://www.jw.org/en/library/music-songs/original-songs/never-alone/?content=video | PA0002131662 | 8/3/2018 |
| Allan Boyle: Deep Study for a Clearer Picture | https://www.jw.org/en/library/videos/#en/mediaitems/VODIntExpArchives/pub-jwb_201807_4_VIDEO | PA0002131659 | 8/3/2018 |
| Keep a Tight Grip—Through Effective Personal Study | https://www.jw.org/en/library/videos/#en/mediaitems/VODBiblePrinciples/pub-jwb_201807_6_VIDEO | PA0002131853 | 8/3/2018 |

| Mark Noumair: Keep "a Tight Grip on the Word of Life" | https://www.jw.org/en/library/videos/#en/mediaitems/StudioTalks/pub-jwb_201807_2_VIDEO | PA0002131665 | 8/3/2018 |

(the "Original WT Videos"). Attached hereto as **Exhibits B** are true and correct copies of the Certificates of Registration of the Original WT Videos corresponding to Copyright Registration Numbers PA0002131662, PA0002131659, PA0002131853, and PA0002131665.

6. The Original WT Videos also were published and registered with the Copyright Office (PA0002132168) as a compilation with additional material (together with the Original WT Videos, the "WT Videos"). Attached hereto as **Exhibit C** is a true and correct copy of the Certificate of Registration for this compilation corresponding to Copyright Registration Number PA0002132168.

7. Although the subject matter of the WT Videos is derived from the bible and the teachings of Jehovah's Witnesses, the videos are creative, expressive and non-factual works.

8. One of the WT Videos is a music video with musical and actor performances, costumes, sets, lighting and sound design.

9. The other WT Videos similarly contain significant expressive language, design and production choices.

10. WT intended that it would, and in fact did, itself first publish the WT Videos via the JW Website in July 2018.

11. WT had taken precautions to protect the WT Videos from premature disclosure to the public, including: (1) restricting access to and creating authorization levels within the software used to produce the videos; (2) requiring production team members to sign confidentiality agreements; and (3) limiting and vetting through WT's computer department security team and management any non-WT storage or distribution system used in production.

12. Despite these measures, several months before WT was able to exercise its right of first publication, and before one of the videos (the Never Alone music video) was finalized, unbeknownst to WT, Doe somehow obtained copies of the WT Videos without WT's consent.

13. On May 18, 2018, Doe posted a video entitled "DUBTOWN – Family Worship July Broadcast" (the "Doe Video") on the video platform YouTube, which is owned by Google, Inc. ("Google").

14. The Doe Video reproduced significant portions—both quantitatively and qualitatively—of the WT Videos, including approximately 90% of the visual aspects and more than 50% of the audio aspects of the Never Alone music video, and the "heart" and significantly-creative aspects of the other videos.

15. The portions of the JW Videos copied in the Doe Video generally are unaccompanied by criticism or comment beyond the equivalent of "watch this."

16. The characters in the Doe Video state that the WT Videos were "leaked" to them by a "good friend deep inside Bethel," and that they "get to enjoy July's broadcast" "before the rank and file get to see it."

17. Doe's "comments" on the Never Alone music video amount mostly to: (1) ridiculing the presence of a blank green screen in some of the segments, even though it was clear the video was not complete before Doe unlawfully obtained a copy thereof; and (2) juxtaposing other sound recordings (presumably without permission from those copyright owners) over certain segments of the video.

18. Content from the WT Videos comprised over half of the Doe Video.

19. WT did not grant authorization to Doe to obtain prior to publication, to reproduce, to broadcast or to use in any manner the WT Videos.

3

20. Doe boasted on his YouTube page that he obtained the WT Videos "early," clearly mocking WT's first publication right and copyright law. Attached hereto as **Exhibit D** is a true and correct copy of a screenshot from Doe's YouTube page on which Doe boasts of his wrongful conduct and mocks WT's rights and the protections of copyright law.

21. Although Doe claims he only reproduced without authorization content from *one* video created by WT, he actually reproduced content from at least *four* videos.

22. On his YouTube page, Doe solicited financial contributions in connection with the Doe Video: "for those who have asked about supporting my work, my paypal account is kevinmcfree@gmail.com." *See* **Ex. D**.

23. In one of Doe's videos posted several months after the Doe Video, he touts the monetization of his other videos about Jehovah's Witnesses through paid Google advertisements, thanks those who have sent him "donations," requests additional "donations" and promotes his new for profit t-shirt business that ties into his videos. A copy of this video can be found at the URL https://www.youtube.com/watch?v=h7uM1tVAZYw. Attached hereto as **Exhibit E** are true and correct copies of screenshots from Doe's t-shirt business website.

24. Doe apparently solicits "donations" for each video he posts on YouTube. Attached hereto as **Exhibit F** are true and correct copies of representative screenshots from Doe's YouTube page on which he solicits donations for the videos he posts. Many of these same videos are monetized through Google Ads.

25. Doe also promotes and provides direct links to a third-party for-profit design service and t-shirt store in connection with several YouTube videos. *See* **Ex. F** and the aforementioned video at https://www.youtube.com/watch?v=h7uM1tVAZYw.

26. Attached hereto as **Exhibit G** are true and correct copies of screenshots from representative examples of Doe's other videos that are monetized through Google Ads.

27. Shortly after WT first learned about the Doe Video, on June 6, 2018, WT sent a copyright infringement take down notice to Google pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), demanding removal of the Doe Video from YouTube.

28. In the take down notice, WT alleged that the Doe Video infringed WT's copyrights in the WT Videos, as well as in two prior existing works of art owned by WT. Attached hereto as **Exhibit H** is a true and correct copy of the June 6, 2018 take down notice.

29. In response to WT's take down notice and in accord with the procedures set forth in the DMCA, YouTube removed the Doe Video from its platform.

30. Upon WT's application, on June 20, 2018, the Clerk of the Court issued to Google the subpoena in the instant miscellaneous action seeking the name, address, telephone number, email address and IP (internet protocol) address associated with the Doe Video (the "Subpoena"). Attached hereto as **Exhibit I** is a true and correct copy of the Subpoena.

31. WT served the Subpoena on Google on July 6, 2018. Attached hereto as **Exhibit J** is a true and correct copy of the Certificate of Service of the Subpoena.

32. Google's deadline to respond to the Subpoena was July 15, 2018. *See* **Ex. J**.

33. On August 22, 2018, Doe identified himself as the author and publisher of the Doe Video and filed a letter with the Court requesting a pre-motion conference on his proposed motion to quash the Subpoena (Dkt.#6).

34. On August 27, 2020, the Court set a briefing schedule for the motion to quash without the need for a pre-motion conference (Dkt.#11).

35. Doe does not identify himself by name on his YouTube page and has gone to great lengths to mask his true identity from WT and the public.

36. Google will not provide the information about Doe's identity until and unless the Court denies Doe's motion to quash.

37. WT cannot determine the identity and contact information for Doe without obtaining such information by the Subpoena.

38. Doe avers he obtained all portions of the WT Videos that he reproduced in the Doe Video from a third-party video posted on YouTube on April 4, 2018 by "John Cedars" aka Lloyd Evans (the "Cedars Video"). Seymour Decl. ¶ 13.

39. However, this claim is demonstrably false. Certain portions of the WT Videos that were replicated in the Doe Video (time stamps 1:58-2:10 and 5:39-5:49 in the Doe Video) do not appear in the Cedars Video.

40. Doe also claims that WT has not sent a take down notice to YouTube concerning the Cedars Video (or was unsuccessful in such actions). Seymour Decl. ¶¶ 16-17.

41. WT was unaware of the Cedars Video until Doe served his moving papers on September 28, 2020.

42. Doe did not disclose the video title, user/account name or URL associated with the Cedars Video in his August 22, 2018 pre-motion letter to the Court (Dkt.#6), or at any time during the two years thereafter.

43. When WT had become aware of infringing content posted by Mr. Evans in the past, it sent DMCA take down notices to the hosting ISPs and a demand letter directly to Mr. Evans.

44. WT's copyright enforcement efforts are supported by voluntary donations.

45. Because of its limited resources and non-profit status, WT takes reasonable, cost-efficient and calculated efforts to protect its copyrighted content.

46. WT protects its copyrighted content by securing federal copyright registrations.

47. WT has secured over 3,300 federal copyright registrations to date.

48. WT protects its copyrighted content by posting copyright notices on its content and the JW Website.

49. WT protects its copyrighted content by posting terms of use on the JW Website that clearly state users may not "[p]ost artwork, electronic publications, trademarks, music, photos, videos, or articles from this website on the Internet (any website, file-sharing site, video-sharing site, or social network)." Attached hereto as **Exhibit K** is a true and correct copy of the Terms of Use from the JW Website.

50. WT protects its copyrighted content by sending cease and desist letters.

51. WT protects its copyrighted content by speaking directly with infringers.

52. WT protects its copyrighted content by serving DMCA subpoenas seeking identifying information about infringers.

53. As WT has increased its digital distribution of its works, including via the JW Website, it has seen an escalation in instances of infringement.

54. To deal with these increasing copyright violations, in or about 2018, WT expanded its legal team and resources dedicated to enforcing its copyrights.

55. During this time, WT has obtained and served approximately sixty DMCA subpoenas and began assessing potential litigations.

56. The responses to many of these subpoenas did not reveal information that would help identify the name or address of the infringer.

57. For example, many responses revealed IP addresses and VPNs (virtual private networks) not associated with any one individual.

58. Responses to other subpoenas indicated that infringers were located outside the jurisdiction of the U.S. courts.

59. With respect to the subpoenas that did elicit identifying information, given WT's limited enforcement budget, it approaches litigation cautiously and needs to make the actions it takes count.

60. In an attempt to avoid litigation, many of these matters were resolved without the need for judicial intervention, including through written or oral communications with the infringer (including those located outside the U.S.).

61. Several of these matters involved infringers who had permanently stopped their infringing activities after the initial demand.

62. In contrast to those who complied with WT's initial demands, Doe has continued to use other WT copyrighted material in his videos well after the Subpoena and take down notice were issued.

63. WT has never publicly disclosed the identity of any infringer revealed in response to a WT DMCA subpoena.

64. If any information about a potential infringer has become public, it is due to that person's own disclosure.

65. No person whose identity was obtained through a WT DMCA subpoena has been subject to doxing by WT.

66. No information obtained through use of a WT DMCA subpoena has been used to disfellowship the subject of a DMCA subpoena.

67. Some of the subjects of WT DMCA subpoenas were active Jehovah's Witnesses before they became the subject of a subpoena and remained active Jehovah's Witnesses after WT received identifying information about them.

68. "John Cedars" aka Lloyd Evans, whom Doe references several times in his moving papers, does not hide his name or identity in his YouTube videos that express negative opinions about Jehovah's Witnesses.

69. Mr. Evans appears personally in nearly all his video and prominently touts his real name "Lloyd Evans" on his YouTube page and as the author of two books he has written about himself and Jehovah's Witnesses. Attached hereto as **Exhibit L** are true and correct screenshots of the Home page and the About page from Mr. Evans' YouTube page.

70. Absent the subpoenaed information here, WT will not be able to evaluate the appropriateness of a federal litigation, including if the Court has personal jurisdiction over Doe, or serve process on Doe.

71. WT needs to know Doe's identity for other legitimate enforcement purposes, including policing against repeat infringers, identifying the source of leaks of its unpublished works and securing the JW Website from unauthorized encroachments.

72. If Doe remains anonymous, WT also would be prejudiced in its ability to prosecute a case of copyright infringement.

73. JW's ability to develop necessary jurisdictional facts and material to impeach Doe's credibility at trial is substantially hampered if it cannot confront Doe in a meaningful way during the discovery process.

74. Attached hereto as **Exhibit M** is a true and correct copy of the docket sheet (with text orders) in *Watch Tower Bible and Tract Society of Pennsylvania*, No. 20 Misc. 119 (S.D.N.Y.), in which Hon. Judge Seibel recently denied a motion to quash one of WT's DMCA subpoenas.

75. Earlier this year WT filed a copyright infringement action (*Watch Tower Bible and Tract Society of Pennsylvania v. The Truth and Transparency Foundation, et al.*, No. 20

9

Civ. 3366 (S.D.N.Y.) (Vyskocil, J.)) against defendants that had unlawfully reproduced seventy-four of Watch Tower's videos. Before answering, the defendants entered into a consent judgment and permanent injunction enjoining them from further use of the videos or any of Watch Tower's copyrighted works. Attached hereto as **Exhibit N** is a copy of the docket sheet (with text injunction order) in that litigation.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  October 27, 2020

                                                                                                          Paul D. Polidoro