Eric J. Shimanoff (ejs@cll.com)
Thomas Kjellberg (txk@cll.com)
Kieran G. Doyle (kgd@cll.com)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036
(212) 790-9200

Paul D. Polidoro (ppolidor@jw.org)
Watch Tower Bible and Tract Society of Pennsylvania
100 Watchtower Drive
Patterson, NY 12563
(845) 306-1000

*Attorneys for Respondent Watch Tower Bible
and Tract Society of Pennsylvania*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                                                  :

                                                        :       Case No. 7:18-mc-00268 (NSR)

DMCA Section 512(h) Subpoena to                         :
YOUTUBE (GOOGLE, INC.)                                  :

                                                        :

------------------------------------------------------------ x

# MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO QUASH SUBPOENA AND TO PROCEED ANONYMOUSLY

Respondent Watch Tower Bible and Tract Society of Pennsylvania ("Watch Tower") respectfully submits this memorandum of law further in opposition to Movant John Doe's ("Doe") motion for an Order, pursuant to Fed. R. Civ. P. 45(d)(3), quashing the subpoena issued in this matter on June 20, 2018, or in the alternative granting Doe leave to proceed anonymously.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................1

FACTS ............................................................................................................................................3

ARGUMENT ..................................................................................................................................8

I.      THE COURT SHOULD DENY DOE'S MOTION TO QUASH .....................................8

      A.      Doe's Motion to Quash Is Untimely ......................................................................8

      B.      The *Arista* Factors Mandate that the Court Sustain the Subpoena .........................9

            1.      WT Has Established a *Prima Facie* Claim of Copyright Infringement and Doe Has Failed to Establish Fair Use as a Matter of Law ...............................................................................10

            2.      The Subpoenaed Information Is Specific and Narrowly Tailored to Identify the Infringer .................................................17

            3.      WT Has No Alternative Means to Obtain the Subpoenaed Information ............................................................................17

            4.      WT Needs the Subpoenaed Information to Advance Its Copyright Claim......................................................................18

            5.      Doe Has No Expectation of Privacy on YouTube .....................18

            6.      *In re DMCA Subpoena to Reddit, Inc.* Is <u>Not</u> Relevant ............................18

      C.      WT Issued the Subpoena to Protect Its Copyrights .............................................19

II.     THE COURT SHOULD DENY DOE'S MOTION TO PROCEED ANONYMOUSLY .......................................................................................................22

CONCLUSION..............................................................................................................................25

31653/000/3574339

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir. 1994)..................................................................................................11

*Anonymous v. Simon*,
   2014 U.S. Dist. LEXIS 27563 (S.D.N.Y. Mar. 3, 2014) ...................................................22, 23

*Arista Records, LLC v. Doe*,
   604 F.3d 110 (2d Cir. 2010)..................................................................................9, 10, 17, 18

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006)..................................................................................................11

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
   2013 U.S. Dist. LEXIS 48513 (S.D.N.Y. Mar. 29, 2013) .......................................................12

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).........................................................................10, 11, 13, 14, 15, 16, 17

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013)..................................................................................................14

*Chi. Bd. of Educ. v. Substance, Inc.*,
   354 F.3d 624 (7th Cir. 2003) ................................................................................................17

*Coleman v. HBO, Inc.*,
   2019 U.S. Dist. LEXIS 230656 (E.D.N.Y. Aug. 6, 2019).......................................................11

*In re DMCA Subpoena to Reddit, Inc.*,
   441 F. Supp. 3d 875 (N.D. Cal. 2020) ..............................................................................18, 19

*Doe v. Skyline Autos., Inc.*,
   375 F. Supp. 3d 401 (S.D.N.Y. 2019)....................................................................................24

*Doe v. Weinstein*,
   2020 U.S. Dist. LEXIS 161497 (S.D.N.Y. Sep. 3, 2020).......................................................23

*Everson v. Board of Education*,
   330 U.S. 1 (1947)..................................................................................................................21

*Fox News Network, LLC v. TVEyes, Inc.*,
   883 F.3d 169 (2d Cir. 2018)..................................................................................................10

31653/000/3574339

*Graham v. Prince*,
    265 F. Supp. 3d 366 (S.D.N.Y. 2017)................................................................11

*H. M. Kolbe Co. v. Armgus Textile Co.*,
    315 F.2d 70 (2d Cir. 1963)..........................................................................19

*Harbus v. Manhattan Inst. for Policy Research, Inc.*,
    2020 U.S. Dist. LEXIS 74568 (S.D.N.Y. Apr. 27, 2020)........................................13

*Harper & Row, Publrs. v. Nation Enters.*,
    471 U.S. 539 (1985)..........................................................................13, 14, 15, 16

*Hirsch v. CBS Broad. Inc.*,
    2017 U.S. Dist. LEXIS 123468 (S.D.N.Y. Aug. 4, 2017)................................11, 14

*Hirsch v. Complex Media, Inc.*,
    2018 U.S. Dist. LEXIS 209701 (S.D.N.Y. Dec. 10, 2018) ....................................14

*Infinity Broad. Corp. v. Kirkwood*,
    150 F.3d 104 (2d Cir. 1998)........................................................................15

*John Wiley & Sons, Inc. v. Doe Nos. 1–30*,
    284 F.R.D. 185 (S.D.N.Y. 2012) .............................................................9, 17, 18

*LaChapelle v. Fenty*,
    812 F. Supp. 2d 434 (S.D.N.Y. 2011)................................................................12

*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*,
    179 F.3d 1244 (9th Cir. 1998) ......................................................................21

*Maxtone-Graham v. Burtchaell*,
    803 F.2d 1253 (2d Cir. 1986)........................................................................13

*N. Jersey Media Grp., Inc. v. Doe*,
    2012 U.S. Dist. LEXIS 167317 (S.D.N.Y. Nov. 26, 2012)....................................24

*Nova Biomedical Corp. v. i-STAT Corp.*,
    182 F.R.D. 419 (S.D.N.Y. 1998) .......................................................................9

*Paul v. Watchtower Bible & Tract Soc.*,
    819 F.2d 875 (9th Cir. 1987) .........................................................................23

*Salinger v. Random House, Inc.*,
    811 F.2d 90 (2d Cir. 1987).............................................................................17

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008)...........................................................................22

31653/000/3574339

*Sony Music Entertainment Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004)..................................................................18

*Southside Fair Housing Committee v. New York*,
  928 F.2d 1336 (2d Cir. 1991)............................................................................22

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014)................................................................................10

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016)..............................................................................13

*United States v. Gillette*,
  383 F.2d 843 (2d Cir. 1967)..............................................................................21

*United States v. Int'l Bus. Machines Corp.*,
  70 F.R.D. 700 (S.D.N.Y. 1976) .........................................................................21

*United States v. Pilcher*,
  950 F.3d 39 (2d Cir. 2020)................................................................................23

*Watch Tower Bible and Tract Society of Pennsylvania v. The Truth and
  Transparency Foundation, et al.*,
  No. 20 Civ. 3366 (S.D.N.Y.) (Vyskocil, J.).................................................19, 20

*Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*,
  536 U.S. 150 (2002)..........................................................................................10

*Wright v. Warner Books, Inc.*,
  953 F.2d 731 (2d Cir. 1991)..............................................................................15

**Statutes**

Digital Millennium Copyright Act ("DMCA"), 15 U.S.C. § 512............................................ *supra*

iv

## PRELIMINARY STATEMENT

The Court should not grant Doe the extraordinary relief of quashing a subpoena and proceeding anonymously. Not only has Doe mispresented key facts to the Court—including how and from whom he obtained leaked copies of Watch Tower's videos—but there are other disputed issues of material fact—including concerning the commercial nature of his infringing video, the amount of material Doe took from Watch Tower, Doe's purported commentary in the infringing video, the creativity underlying Watch Tower's videos and Doe's unfounded claims of disfellowshiping and doxing. The Court cannot determine the highly fact sensitive issue of fair use as a matter of law or diverge from the normal practice of proceeding without anonymity at this premature juncture without discovery and before a complaint even has been filed.

Doe's representation that he obtained the Watch Tower videos from another YouTube video is demonstrably false. Portions of the Watch Tower videos that appear in Doe's video do not appear in that third-party video, making Doe's assertion an impossibility. This disparity creates significant issues of fact—including as to whether Doe was actively involved in the unlawful exfiltration of the Watch Tower videos—shows a clear need for discovery without the shield of anonymity to test Doe's credibility and vitiates any claim Doe has for equitable relief.

Doe also misleads the Court about the commercial nature of his infringing video. Doe specifically solicited financial contributions for his video and even provided his PayPal account information therefor. Doe regularly monetizes his other videos, including through Google Ads, seeking direct contributions and promoting and linking to his and third-party t-shirt businesses.

Doe similarly attempts to minimize the amount of the Watch Tower videos that appear in his infringing video, failing to acknowledge that he took material from four original works (not just one work), including 90% of the visual aspects of a highly creative music video. Doe also fails to acknowledge that more than half of his video was comprised of Watch Tower content.

1

While Doe claims his video is a fair use criticism of Jehovah's Witnesses, the actual commentary appears to be more along the lines of simply "watch this," belying his claims of fair use. Doe also makes a concerted effort to boast how he unlawfully obtained the Watch Tower videos "early" as they were "leaked" to him by a "good friend deep inside Bethel," and that he gets "to enjoy July's broadcast" "before the rank and file get to see it." Doe's commentary appears to be more about mocking copyright law and the right of first publication, and touting how his copy was unauthorized, more than about any actual criticism of the constitutionally protected religious practices of Jehovah's Witnesses. Doe similarly makes a bald statement that the underlying Watch Tower videos are merely information and religious in nature, ignoring that one is a music video and that each contains significant creative content and choices.

Finally, Doe's claims of potential doxing and disfellowshiping are baseless. Watch Tower has never publicly disclosed the identity of any infringer revealed in response to a DMCA subpoena. And no person whose identity was obtained through a DMCA subpoena has been subject to doxing or disfellowshiping by Watch Tower. Doe has not provided one example to the contrary. His own allegations—inadmissible hearsay asserted by Doe's counsel without personal knowledge—admit that his concerns of doxing and disfellowshiping are based on mere conjecture. That Watch Tower has not yet filed a copyright litigation against the subject of a subpoena is not indicative of any ill motives. As Judge Siebel recently held in connection with a motion to quash another subpoena, Watch Tower has valid and reasonable explanations for not pursuing more litigations—including its limited enforcement budget; the lack of useful information provided in response to many of these other subpoenas; the potential lack of jurisdiction over certain infringers; and Watch Tower's own ability to resolve matters without the need for judicial intervention, including through settlement.

**FACTS**

Watch Tower ("WT") is a non-profit corporation that is responsible for the creation, publication and protection of original works of authorship—including books, magazines, music, visual art and videos—that support the work of Jehovah's Witnesses.  Much of the original content created by WT is published and distributed pursuant to license by third party Watch Tower Bible and Tract Society of New York, including via the website at www.jw.org (the "JW Website").  Declaration of Paul D. Polidoro ("Polidoro Decl.") ¶¶ 3-4 & Ex. A.

Between August 2017 and January 2018, WT created the following four original audio-visual works, each of which is registered with the U.S. Copyright Office:

| Title | Current Location on the JW Website | Copyright Registration No. | Registration Date |
|---|---|---|---|
| Never Alone | https://www.jw.org/en/library/music-songs/original-songs/never-alone/?content=video | PA0002131662 | 8/3/2018 |
| Allan Boyle: Deep Study for a Clearer Picture | https://www.jw.org/en/library/videos/#en/mediaitems/VODIntExpArchives/pub-jwb_201807_4_VIDEO | PA0002131659 | 8/3/2018 |
| Keep a Tight Grip—Through Effective Personal Study | https://www.jw.org/en/library/videos/#en/mediaitems/VODBiblePrinciples/pub-jwb_201807_6_VIDEO | PA0002131853 | 8/3/2018 |
| Mark Noumair: Keep "a Tight Grip on the Word of Life" | https://www.jw.org/en/library/videos/#en/mediaitems/StudioTalks/pub-jwb_201807_2_VIDEO | PA0002131665 | 8/3/2018 |

(the "Original WT Videos").  *Id*. ¶ 4 & Ex. B.  The Original WT Videos also were published and registered with the Copyright Office (PA0002132168) as a compilation with additional material (with the Original WT Videos, the "WT Videos").  *Id*. ¶ 6 & Ex. C.  Although the subject matter of the WT Videos is derived from the bible and the teachings of Jehovah's Witnesses, the videos are creative, expressive and non-factual works; indeed, one is a music video with musical and actor performances, costumes, sets, lighting and sound design.  The other videos similarly

3

contain significant expressive language and design and production choices.  *Id.* ¶¶ 7-9.

WT intended that it would, and in fact did, itself first publish the WT Videos via the JW Website in July 2018.  WT had taken precautions to protect the WT Videos from premature public disclosure, including by: (1) restricting access to and creating authorization levels within the software used to produce the videos; (2) requiring production team members to sign confidentiality agreements; and (3) limiting and vetting through WT's computer department security team and management any non-WT storage or distribution system used in production.  Despite these measures, several months before WT was able to exercise its right of first publication, and before all of the videos were finalized, unbeknownst to WT, Doe somehow obtained copies of the WT Videos without WT's consent.  *Id.* ¶¶ 10-12.

On May 18, 2018, Doe posted a video entitled "DUBTOWN – Family Worship July Broadcast" (the "Doe Video") on the video platform YouTube, which is owned by Google, Inc. ("Google").    The Doe Video reproduced significant portions—both quantitatively and qualitatively—of the WT Videos, including approximately 90% of the visual aspects and more than 50% of the audio aspect of the Never Alone music video and also copied the "heart" and significantly creative aspects of the other videos.  The portions of the WT Videos copied in the Doe Video generally are unaccompanied by criticism or comment beyond the equivalent of "watch this."  The characters in the Doe Video state that the WT Videos were "leaked" to them by a "good friend deep inside Bethel," and that they "get to enjoy July's broadcast" "before the rank and file get to see it."  Doe's "comments" on the Never Alone music video amount mostly to: (1) ridiculing the presence of a blank green screen in some of the segments, even though it was clear the video was not complete before Doe unlawfully obtained a copy thereof; and (2) juxtaposing other sound recordings (presumably without permission from those copyright

4

owners) over certain segments of the video.  Content from the WT Videos comprised over half of the Doe Video.  *Id*. ¶¶ 13-18.

WT did not grant authorization to Doe to obtain prior to publication, to reproduce, to broadcast or to use in any manner the WT Videos.  Doe boasted on his YouTube page that he obtained the WT Videos "early," clearly mocking WT's first publication right and copyright law. Although Doe claims he only reproduced without authorization content from ***one*** video created by WT, he actually reproduced content from at least ***four*** videos.  *Id*. ¶¶ 19-21 & Ex. D.

On his YouTube page, Doe solicited financial contributions in connection with the Doe Video: "for those who have asked about supporting my work, my paypal account is kevinmcfree@gmail.com."  Doe apparently solicits "donations" for each video he posts on YouTube.  Many of these same videos are monetized through Google Ads. In one of Doe's videos, he touts the monetization of his other videos about Jehovah's Witnesses through paid Google advertisements, thanks those who have sent him "donations," requests additional "donations" and promotes his new for-profit t-shirt business that ties into his videos.  In connection with several YouTube videos, Doe also promotes and provides direct links to a third-party for-profit design service and t-shirt store.  *Id*. ¶¶ 22-26 & Exs. D-G.

Shortly after WT first learned about the Doe Video, on June 6, 2018, WT sent a copyright infringement take down notice to Google pursuant to the Digital Millennium Copyright Act ("DMCA"), demanding removal of the Doe Video from YouTube.  In the notice, WT alleged that the Doe Video infringed WT's copyrights in the WT Videos, as well as in two works of art owned by WT.  In response to WT's take down notice and in accord with the procedures set forth in the DMCA, YouTube removed the Doe Video from its platform.  *Id*. ¶¶ 27-29 & Ex. H.

In addition to take down procedures, the DMCA also allows copyright owners to obtain

from the Court a subpoena to an ISP (internet service provider) seeking "information sufficient to identify the alleged infringer."  17 U.S.C. § 512(g).  Upon WT's application, on June 20, 2018, the Clerk of the Court issued to Google a subpoena seeking the name, address, telephone number, email address and IP (internet protocol) address associated with the Doe Video (the "Subpoena").  WT served the Subpoena on Google on July 6, 2018.  Google's deadline to respond to the Subpoena was July 15, 2018.  Polidoro Decl. ¶ 30-32 & Exs. H-J.

On August 22, 2018, Doe identified himself as the author and publisher of the Doe Video and filed a letter with the Court requesting a pre-motion conference on his proposed motion to quash the Subpoena (Dkt.#6).  On August 27, 2020, the Court set a briefing schedule for the motion to quash without the need for a pre-motion conference (Dkt.#11).

Doe avers he obtained all portions of the WT Videos that he reproduced in the Doe Video from a third-party video posted on YouTube on April 4, 2018 by "John Cedars" aka Lloyd Evans (the "Cedars Video").  Seymour Decl. ¶ 13. However, *this claim is demonstrably false*.  Certain portions of the WT Videos that were replicated in the Doe Video (time stamps 1:58-2:10 and 5:39-5:49 in the Doe Video) *do not appear in the Cedars Video*.  Polidoro Decl. ¶ 39.

Doe also claims that WT has not sent YouTube a demand to take down the Cedars Video (or was unsuccessful in such actions).  Seymour Decl. ¶¶ 16-17. Setting aside that a third party's potential copyright violation does not justify Doe's own actions, WT was unaware of the Cedars Video until Doe served his moving papers on September 28, 2020.  Doe did not disclose the title, account name or URL associated with the Cedars Video in his August 22, 2018 pre-motion letter to the Court (Dkt.#6), or at any time during the two years thereafter.  Moreover, when WT had become aware of infringing content posted by Mr. Evans in the past, it sent DMCA take down notices to the hosting ISPs and a demand letter directly to Mr. Evans.  Polidoro Decl. ¶¶ 40-43.

WT's copyright enforcement efforts are supported by voluntary donations.  Because of its limited resources, WT takes reasonable, cost-efficient and calculated efforts to protect its copyrighted content, typically by: (1) securing federal copyright registrations (over 3,300 to date); (2) posting copyright notices on its content and the JW Website; (3) posting terms of use on the JW Website that users may not "[p]ost artwork, electronic publications, trademarks, music, photos, videos, or articles from this website on the Internet (any website, file-sharing site, video-sharing site, or social network)"; (4) sending cease and desist letters; (5) speaking directly with infringers; and (6) serving DMCA subpoenas seeking identifying information about infringers.  *Id*. ¶¶ 44-52 & Ex. K.

As WT has increased its digital distribution of its works, including via the JW Website, it has seen an escalation in instances of infringement.  To deal with these increasing copyright violations, in or about 2018, WT expanded its legal team and resources dedicated to enforcing its copyrights.  During this time, WT has obtained and served approximately sixty DMCA subpoenas and began assessing potential litigations.  Unfortunately, the responses to many of these subpoenas did not reveal information that would help identify the name or address of the infringer.  For example, many responses revealed IP addresses and VPNs (virtual private networks) not associated with any one individual.  Responses to other subpoenas indicated that infringers were located outside the jurisdiction of the U.S. courts.  *Id*. ¶¶ 53-58.

With respect to the subpoenas that did elicit identifying information, given WT's limited enforcement budget and non-profit status, it approaches litigation cautiously and needs to make the actions it takes count.  In an attempt to avoid litigation, many of these matters were resolved without the need for judicial intervention, including through written or oral communications with the infringer (including those located outside the U.S.).  And, unlike here, where Doe continued

7

to use other WT copyrighted material in his videos well after the Subpoena was issued, several of these matters involved infringers who had stopped their infringing activities.  *Id*. ¶¶ 59-62.

WT has never publicly disclosed the identity of the subject of a WT DMCA subpoena. No person whose identity was obtained through a WT DMCA subpoena has been subject to doxing by WT.  No information obtained through a WT DMCA subpoena has been used to disfellowship the subject of that subpoena.  Some subjects of WT DMCA subpoenas were active Jehovah's Witnesses before they became the subject of a subpoena and remained active Jehovah's Witnesses after WT received identifying information about them.  *Id*. ¶¶ 63-67.

Doe will not lose any purported right to express his views of Jehovah's Witnesses if the Court sustains the subpoena or denies his motion to proceed anonymously.  Myriad third parties have posted commentary on Jehovah's Witnesses via various media without any hindrance of their rights of free speech.  Indeed, Mr. Evans, whom Doe references several times in his moving papers, does not hide his name or identity in his YouTube videos that express negative opinions about Jehovah's Witnesses.  To the contrary, he appears personally in nearly all his video and prominently touts his real name "Lloyd Evans" on his YouTube page and as the author of two books he has written about himself and Jehovah's Witnesses.  *Id*. ¶¶ 68-69 & Ex. L.

## **ARGUMENT**

## I.     **THE COURT SHOULD DENY DOE'S MOTION TO QUASH**

### A.     **Doe's Motion to Quash Is Untimely**

Doe's August 22, 2018 pre-motion conference letter (Dkt.#6) acknowledged that his anticipated motion to quash was ***untimely*** as the letter was ***filed over a month after the Subpoena's responsive deadline***.  Doe further represented in his pre-motion letter that his motion would include a request to extend the time to move to quash "on grounds of excusable neglect."  The Court's August 27, 2020 Order dispensing with the need for a pre-motion

conference and setting a briefing schedule (Dkt.#11) did not make any explicit ruling on whether Doe's motion to quash was timely.  Nor did Doe move to extend the deadline to move to quash in his motion papers or make any arguments therein concerning excusable neglect.  WT maintains its objection that the instant motion is untimely.  *See Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 422 (S.D.N.Y. 1998) ("timely motion" under Rule 45 must be made prior to return date).  By failing to move to extend the time to move to quash under Rule 6 in his motion papers, Doe has waived the right to argue the deadline should be extended.  The Court should deny Doe's motion on this basis alone.

### B.      The *Arista* Factors Mandate that the Court Sustain the Subpoena

"The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work."  *Arista Records, LLC v. Doe*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106).  While "the First Amendment provides protection for anonymous speech . . . [it] does not . . . provide a license for copyright infringement.  *Id*. at 119.  "Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."  *Id*.  In determining whether to quash a subpoena seeking the identity of an anonymous infringer, courts consider:

> (1) [the] concrete[ness of the plaintiff's] showing of a *prima facie* claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Id*. (alterations in original).  Doe bears the burden of showing that the Court should quash a subpoena.  *See John Wiley & Sons, Inc. v. Doe Nos. 1–30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012).

31653/000/3574339

Examination of each of the *Arista* factors compels the Court to deny Doe's motion to quash.[1]

### 1.     WT Has Established a *Prima Facie* Claim of Copyright Infringement and Doe Has Failed to Establish Fair Use as a Matter of Law

The elements of copyright infringement are: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Id*. at 117.[2]  Doe does not dispute that WT is the owner of the copyrights in  and that he copied portions of the WT Videos without permission.  Doe instead argues that his copying of the WT Videos constitutes "fair use."

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  "[T]he . . . factors [may not] be treated in isolation . . . . All are to be explored, and the results weighed together, in light of the purposes of copyright."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994).  "Fair use is an affirmative defense, so [Doe] bears the burden of proving it," *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018).  "[W]hatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving" party.  *Id.* at 187 n.38.

Because "fair use is a mixed question of fact and law," *Swatch Grp. Mgmt. Servs. v.*

---

[1] Doe's reference to *Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002)—a case in which WT was not a party—is nothing more than a red herring that has no relevance here.  The issue in *Stratton* was whether a person had to disclose their identity and obtain a permit before exercising their right to speech and religious practice.  Here, not only has Doe already spoken, but he has unlawfully copied and leaked WT's copyrighted materials in connection with such speech in violation of the Copyright Act.  The First Amendment is not a defense to copyright infringement.  *Arista Records*, 604 F.3d at 119.

[2] Watch Tower's registration certificates create a presumption of the validity and originality of the copyrights in the Watch Tower Works.  17 U.S.C. § 410(c).

*Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014), its "application . . . always depends on consideration of the precise facts at hand." *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 916 (2d Cir. 1994).  The fair use inquiry "often requires close questions of judgment as to the extent of permissible borrowing," *Campbell*, 510 U.S. at 579 n.10, and the "task [of applying the fair use doctrine] is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Id*. at 577-578.  Evaluating whether a particular use qualifies as fair use requires the Court to engage in "an open-ended and context-sensitive inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).

"[D]ue to the fact-sensitive nature of the inquiry, courts generally do not address the fair use defense until the summary judgment phase." *Graham v. Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017).  While the Second Circuit has acknowledged the ***theoretical*** possibility "of fair use being so clearly established by a complaint as to support dismissal of an copyright infringement claim, there is a dearth of cases granting a motion to dismiss on the basis of fair use." *Id*. (citation omitted).  Court similarly are skeptical about granting summary judgment on fair use. *See Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991) ("the fact-driven nature of the fair use determination suggests that a district court should be cautious in granting Rule 56 motions in this area").

Courts in this Circuit consistently decline to address fair use on such a factually deficient record as the one before the Court. *See*, *e.g.*, *Hirsch v. CBS Broad. Inc.*, 2017 U.S. Dist. LEXIS 123468, at *21-22 (S.D.N.Y. Aug. 4, 2017) ("the pleadings and cognizable materials—limited to the Complaint, the Photo and the Episode—do not contain enough factual content to enable a solid assessment [on fair use]"); *Coleman v. HBO, Inc.*, 2019 U.S. Dist. LEXIS 230656, at *16-17 (E.D.N.Y. Aug. 6, 2019) ("Further development of the record is needed to clarify where

Defendants obtained Plaintiff's work and to identify the intended purpose behind the Film's use of the Work"); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, 2013 U.S. Dist. LEXIS 48513, at *29 (S.D.N.Y. Mar. 29, 2013) ("The Court cannot address the fact-intensive issue of fair use after reviewing only the pleadings [and] before the Parties have completed discovery").

Despite this precedent, Doe asks this Court to determine on a motion to quash an ultimate issue in a yet to be filed litigation, where no complaint has been drafted, without any formal discovery and where key facts, including how Doe obtained the videos and whether the videos are used for commercial purposes, are either disputed, undeveloped or unknown. The minimal and disputed fact record in this matter clearly "is insufficient to make such a fact-intensive ruling as a matter of law." *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 448 (S.D.N.Y. 2011).

### Factor One

The first fair use factor considers the "purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." Doe's bald assertion "that the [Doe] Video was not sold for commercial use or monetized for ad revenue," Seymour Decl. ¶11, is neither accurate nor sufficient to establish that Movant's use was "non-commercial in nature." Doe's YouTube page on which the Doe Video appeared specifically elicited—and provided PayPal account information for—***financial contributions*** to Doe and his video endeavors. The page also promoted and provided a link to a third-party for-profit design business and t-shirt store. Doe also makes similar requests for "donations" in connection with his other videos posted on YouTube and has promoted his own and a third-party for-profit t-shirt business in connection with his videos. Many of Doe's videos are monetized by Google Ads and Doe has created a specific video touting Google Ads and soliciting contributions to his videos.

Whether a use is "commercial" is not a binary determination; the "commercial nature of

the use is a matter of degree, not an absolute." *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1262 (2d Cir. 1986).  And as the Supreme Court has held, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 562 (1985).  Precisely where Doe's use of the WT Videos falls on the commercial-nonprofit spectrum cannot reliably be determined on this premature motion and without discovery.

Another mandatory consideration under the first fair use factor is "the propriety of the defendant's conduct."  *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (noting that "fair use presupposes 'good faith' and 'fair dealing,'" and rejecting fair use defense where defendant "knowingly exploited a purloined manuscript.").   "Because fair use is an affirmative defense, it is the defendant's burden to show that it did not act in bad faith.  On a motion to dismiss on the basis of fair use, absence of bad faith must therefore be evident on the face of the pleadings."  *Harbus v. Manhattan Inst. for Policy Research, Inc.*, 2020 U.S. Dist. LEXIS 74568, at *13 (S.D.N.Y. Apr. 27, 2020).  That is clearly not the case here, where not only has Doe knowingly exploited a stolen copy of unpublished videos, he has misrepresented to the Court how and from whom he obtained that copy.  The *Harper & Row* Court, presented with similarly culpable conduct on the part of the defendant publisher, "assume[d] defendants' bad faith and weigh[ed] this subfactor in favor of plaintiffs."  *Harper & Row*, 471 U.S. at 562.

Another essential aspect of the first factor analysis is whether the use is "transformative"; i.e., whether the new work "merely supersedes the objects" of the original or "instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message."  *Campbell*, 510 U.S. at 579; *see TCA Television Corp. v.*

13

*McCollum*, 839 F.3d 168, 178 (2d Cir. 2016).  Does' claim that his use of the WT Videos was transformative is anything but "self-evidently correct."  *Hirsch v. CBS Broad., Inc.*, 2017 U.S. Dist. LEXIS 123468 *19 (S.D.N.Y. August 4, 2017).  Indeed, the portions of the WT Videos copied in the Doe Video generally are unaccompanied by criticism or comment beyond the equivalent of "watch this."  Doe's "comments" on the Never Alone music video amount mostly to: (1) ridiculing the presence of a blank green screen in some of the segments, even though it was clear the video was not yet complete; and (2) juxtaposing other sound recordings (presumably without permission from those copyright owners) over certain segments of the video.  "Further development of the record is necessary to clarify what, if any, new insights and understandings were created" by Doe's unauthorized use of the WT Videos.  *Hirsch v. Complex Media, Inc.*, 2018 U.S. Dist. LEXIS 209701, at *17 (S.D.N.Y. Dec. 10, 2018).

*Factor Two*

In evaluating the second factor, courts "consider (1) whether the work is expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."  *Cariou v. Prince*, 714 F.3d 694, 709-10 (2d Cir. 2013) (citations and quotation marks omitted).

Here, the second factor weighs against fair use on both counts.  Doe's assertion that the WT Videos are "religious, educational and informational in nature" misunderstands the inquiry under the second fair use factor and misrepresents the nature of the WT Videos, motion pictures that "fall within the core of the copyright's protective purposes."  *Campbell*, 510 U.S. at 586.  To the extent, if any, that the WT Videos are "informational," their expressive qualities overwhelm their factual aspects for the purposes of the second factor.  *See Harper & Row*, 471 U.S. at 563

14

("within the field of fact works, there are gradations as to the relative proportion of fact and fancy.  One may move from sparsely embellished maps and directories to elegantly written biography").  Indeed, one of the works is a music video and the other works contain significant creative choices.  And there can be no dispute that the WT Videos were unpublished when Doe unlawfully obtained them and used them without permission, and that Doe has unclean hands where he misrepresented to the Court where and how he obtained them.

*Factor Three*

The third fair use factor, the amount and substantiality of the portion used, "recognizes that the more of a copyrighted work that is taken, the less likely the use is to be fair, and that even a less substantial taking may be unfair if it captures the essence of the copyrighted work." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998).  The quantitative assessment examines the portion of the copyrighted work that was taken in relation to the whole of that work, while the qualitative assessment considers the importance of the expressive components of the portion copied.  *See Campbell*, 510 U.S. at 587.  Doe's contention that the third factor "looks to the percentage of the original work used in the new work, and not the percentage of the new work consisting of the original work" is thus incomplete—and wrong to boot.  The fair use factors "are not meant to be exclusive," *Harper & Row*, 471 U.S. at 560; and, as *Campbell* explains, under the third factor

> whether a substantial portion of the infringing work was copied verbatim from the copyrighted work is a relevant question, for it may reveal a dearth of transformative character or purpose under the first factor, or a greater likelihood of market harm under the fourth.

510 U.S. at 587-88.  *See also Wright*, 953 F.2d at 739 (fair use should consider "the amount and substantiality of the protected passages in relation to the work accused of infringement").

The Doe Video reproduced significant portions—both quantitatively and qualitatively—

of the WT Videos, including approximately 90% of the visual aspects and more than 50% of the audio aspect of the Never Alone music video and also copied the "heart" and significantly creative aspects of the other videos.  Doe's calculations proffered in his moving papers improperly analyze the WT Videos as one single work, when in fact they were four works, from each of which Doe took substantial amounts.  And more than half of the Doe Video was comprised of the WT Videos.  Whether the "quantity and value of the materials used" without permission by Doe "are reasonable in relation to the purpose of the copying," *Campbell*, 510 U.S. at 586, cannot be conclusively determined without further development of the record.

### *Factor Four*

The fourth factor requires courts to consider not only the extent of harm to the market for, or value of, the copyrighted work "caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590.  The fourth-factor inquiry also "must take account not only of harm to the original but also of harm to the market for derivative works." *Harper & Row*, 471 U.S. at 568.

"Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets." *Campbell*, 510 U.S. at 590.  Doe has placed no such evidence on the record; only the simplistic assertion, *ipse dixit*, that "[b]ecause the [WT] Video is not commercial in nature, it has no 'market' to speak of."  Doe's one-dimensional approach to the fourth factor would clearly be an insufficient basis for the Court to assess the fourth factor even if it were supported by evidence.

Even if Doe were to prove that "Watchtower does not make 'commercial use' of the [WT] Video, and there is no commercial market for the [WT] Video," it would not help Doe on

the fourth factor.  Diminution of market value in copyrighted works "is not lessened by the fact that their author has disavowed the intention to publish them during his lifetime . . . . He is entitled to protect his **opportunity** to sell his letters."  *Salinger v. Random House, Inc.*, 811 F.2d 90, 99 (2d Cir. 1987) (emphasis in original).  And the fourth factor asks the Court to consider the effect of the use not only on the "potential market" for the copyrighted work, but on the "value" of the work.  *See*, *e.g.*, *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 630 (7th Cir. 2003).

In *Campbell*, given the defendants' failure to submit evidence of harm to the potential market for or value of the work, instead "confin[ing] themselves to uncontroverted submissions that there was no likely effect on the market for the original," the Supreme Court found that "it is impossible to deal with the fourth factor except by recognizing that a silent record on an important factor bearing on fair use disentitled the proponent of the defense . . . to summary judgment."  510 U.S. 569 at 590.  The absence from the record of evidence with respect to the fourth factor similarly disentitles Doe to a favorable ruling on Doe's fair use defense.

### 2.   The Subpoenaed Information Is Specific and Narrowly Tailored to Identify the Infringer

The Subpoena seeks information that is narrowly tailored to provide the identity and contact information for the infringer Doe, namely, his name, physical address, email address, telephone number and IP address.  Such a limited request strongly favors sustaining the Subpoena under the second *Arista* factor.  *See John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 189-91 (S.D.N.Y. 2012).

### 3.   WT Has No Alternative Means to Obtain the Subpoenaed Information

Doe does not identify himself on his YouTube page and has gone through great lengths to mask his true identity from WT and the public.  Google will not provide the information about Doe's identity without a subpoena.  WT thus cannot determine the identity and contact

information for Doe without obtaining such information by the Subpoena.  Polidoro Decl. ¶¶ 35-37.  The third *Arista* factor thus weighs strongly in favor of WT.  *See id.* at 189-91.

### 4.   WT Needs the Subpoenaed Information to Advance Its Copyright Claim

Absent the subpoenaed information, WT will not be able to evaluate the appropriateness of a federal litigation, including if the Court has personal jurisdiction over Doe, or serve process on Doe.  These facts strongly weigh in favor of sustaining the Subpoena.  *See Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004).

### 5.   Doe Has No Expectation of Privacy on YouTube

Subscribers of ISPs such as YouTube have only "a minimal expectation of privacy in the transmission or distribution of copyrighted material." *John Wiley & Sons*, 284 F.R.D. at 191.  Google's terms of use specifically state: "Content you submit must not include third-party intellectual property (such as copyrighted material) unless you have permission," *see* https://www.youtube.com/static?template=terms, and "We will share personal information [to m]eet any applicable . . . legal process." *See* https://policies.google.com/privacy.  Doe thus had no reasonable expectation that Google would not disclose his identity when it received the Subpoena.  *See Sony Music*, 326 F. Supp. 2d at 566-67 (no expectation of privacy where terms of service that prohibit copyright infringement and authorize disclosure of identity).  Thus, the final *Arista* factor weighs heavily in favor of sustaining the Subpoena.

### 6.   *In re DMCA Subpoena to Reddit, Inc.* Is <u>Not</u> Relevant

Doe's reliance on *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020), where the Court quashed WT's DMCA subpoena to an ISP, is misplaced.  First, the Court in *Reddit* did not analyze the motion under the Second Circuit's *Arista* test; there is no discussion of four out of the five *Arista* factors.  Second, the relevant fair use facts *Reddit* were different

than those known here.  For example, the Court in *Reddit* found the works at issue were "factual works—instructions on how to donate online and a summary of potentially applicable European data laws," and thus were entitled to a narrow scope of protection.  441 F. Supp. 3d at 885.  Here, the WT Works are creative, audio-visual works—including a music video—which weighs against a finding of fair use.  Similarly, the Court in *Reddit* found that the movant "did not help himself to an oversized portion of WT's works *vis-à-vis* his critical message."  *Id*.  Here, Doe took significant portions of the WT Videos, including 90% of the visual aspects of a music video.  Finally, in *Reddit*, the Court found the facts were undisputed.  441 F. Supp. 3d at 8.  Here, the facts are significantly disputed, including concerning how Doe obtained the WT Videos, the nature and characteristics of the Doe Video and WT's videos, Doe's potential commercial purpose in posting the video and Doe's unsupported allegations about disfellowshiping.

### C.   WT Issued the Subpoena to Protect Its Copyrights

Doe asks the Court to quash the Subpoena for the additional reason that WT purportedly seeks to use the information provided in response to the Subpoena not to protect its copyrights, but for the purposes of doxing Doe.  In support thereof, Doe claims that WT has obtained approximately sixty DMCA subpoenas but has not filed a lawsuit relating to any of those matters.  But this is not evidence of any hidden purpose, let alone that WT desires to dox Doe.

Setting aside that a copyright owner is under no obligation to file suit or take any action against any or all infringers, *see H. M. Kolbe Co. v. Armgus Textile Co.*, 315 F.2d 70, 74 (2d Cir. 1963), WT has legitimate reasons for not filing suit in those other matters.  WT is a non-profit corporation and has a limited budget to engage in expensive litigation; it must be selective and cost-conscious and get the most "bang for its buck," including precedential value.[3]  The

---

[3] Indeed, earlier this year WT filed a copyright infringement action (*Watch Tower Bible and Tract Society of Pennsylvania v. The Truth and Transparency Foundation, et al.*, No. 20 Civ. 3366

responses to most of those subpoenas revealed information that would not help identify the name or address of the infringer or indicated the infringer was beyond the jurisdiction of the United States judicial system.   WT was able to resolve several of the matters after identifying information was disclosed by pre-litigation discussions and correspondence with the infringer. And, unlike Doe, several of the parties were not repeat infringers.

Accepting these explanations as legitimate and reasonable, in *Watch Tower Bible and Tract Society of Pennsylvania*, No. 20 Misc. 119 (S.D.N.Y.), Hon. Judge Seibel recently denied a motion to quash where the movant made arguments nearly identical to those made here by Doe:

> Movant challenges the good faith of Watchtower's representation that its purpose in seeking a DMCA subpoena is solely to identify a potential defendant for a copyright infringement action, alleging that Watchtower has invoked the [DMCA] 59 times without ever then bringing such a lawsuit. ***The Court can imagine reasons for that fact (if it is a fact) that do not evidence lack of good faith*** . . . .

> Having heard further from the parties, I deny the motion to quash. ***Watch Tower has provided an explanation for why it has not pursued more cases*** . . . .

Polidoro Decl. ¶ 74 & Ex. M (emphasis added).

Moreover, Doe's doxing concerns are unfounded, speculative and not supported by admissible evidence.   No person whose identity was obtained through a DMCA subpoena has been subject to doxing by WT.   No information obtained through use of a DMCA subpoena has been used to disfellowship the subject of a DMCA subpoena.   Some of the subjects of WT's DMCA subpoenas were active Jehovah's Witnesses before they became the subject of a DMCA subpoena and remained active Jehovah's Witnesses after WT received subpoena responses.

Notably, Doe fails to submit a declaration (even anonymously or under a pseudonym)

---

(S.D.N.Y.) (Vyskocil, J.)) against defendants that had unlawfully reproduced ***seventy-four*** of Watch Tower's videos.   Polidoro Decl. ¶ 75 & Ex. N.   Before answering, the defendants entered into a consent judgment and permanent injunction enjoining them from further use of the videos or any of WT's copyrighted works. *Id.*

attesting to his purported fears of disfellowshiping.  All allegations concerning Doe have been submitted through the declaration of his counsel.  Not only do these allegations constitute hearsay, but Doe's counsel admittedly lacks personal knowledge thereof.  The Court should disregard Doe's unfounded claims of disfellowshiping for these reasons alone.  *See United States v. Gillette*, 383 F.2d 843, 848-49 (2d Cir. 1967) (rejecting statement submitted by attorney without first hand knowledge of facts).

Even if the Court accepted the declaration of Doe's counsel, Does has failed to establish that disfellowshiping is a likely outcome of the disclosure of Doe's identity.  Doe's counsel spends much time explaining what disfellowshiping is (mostly through unsupported statements and a hearsay third party new article) ***but provides no evidence that disfellowshiping is likely to occur here***.  Not only has Doe failed to cite one instance of doxing or disfellowshiping as a result of an ISP complying with a WT DMCA subpoena, but his counsel admits that Doe's fears are speculative and based on nothing more than Doe's subjective "belief."  Seymour Decl. ¶ 26.  *See also id*. ¶ 19 (merely hypothesizing that "disclosure ***could*** expose [Doe] to retaliation).  Such speculation is insufficient on its own to warrant that the Court quash the Subpoena.  *See United States v. Int'l Bus. Machines Corp.*, 70 F.R.D. 700, 702 (S.D.N.Y. 1976).

Moreover, even if Doe's concerns had any basis in fact, courts "must be careful not to deprive religious organizations of all recourse to the protections of civil law that are available to others."  *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1248 (9th Cir. 1998).  Indeed, "[s]uch a deprivation would raise . . . serious problems under the Free Exercise Clause."  *Id*.  Accordingly, WT is entitled to the same rights afforded to secular organizations under the DMCA, and it cannot be disadvantaged in the enforcement of its copyrights simply because it is a corporation that supports a religious entity.  *See Everson v.*

*Board of Education*, 330 U.S. 1, 16 (1947) ("[W]e must be careful . . . to be sure that we do not inadvertently prohibit New Jersey from extending its general state law benefits to all its citizens without regard to their religious beliefs"); *Southside Fair Housing Committee v. New York*, 928 F.2d 1336, 1348 (2d Cir. 1991) (prohibiting Hasidic religious organizations from buying lands "would be suspect as a possible violation of the free exercise clause of the first amendment").

## II.   THE COURT SHOULD DENY DOE'S MOTION TO PROCEED ANONYMOUSLY

Doe's alternative request for leave to proceed under a pseudonym should also be denied. As a general rule, parties may not proceed anonymously.  Fed. R. Civ. P. 10(a).  This rule 'serves the vital purpose of facilitating public scrutiny of judicial proceedings . . . [it] cannot be set aside lightly."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008).  Simply put, "[t]he people have a right to know who is using their courts."  *Id.*

In order to proceed anonymously, a party must show that his "interest in anonymity" outweighs "both the public interest in disclosure and any prejudice to the defendant." *Anonymous v. Simon*, 2014 U.S. Dist. LEXIS 27563, at *3 (S.D.N.Y. Mar. 3, 2014).  The Second Circuit has identified "non-exhaustive" factors to consider when ruling on a motion to proceed anonymously, including: whether the litigation involves matters that are highly sensitive and of a personal nature; whether identification poses a risk of retaliatory physical or mental harm; and whether the plaintiff is prejudiced by allowing the defendant to press its claims anonymously. *See Sealed Plaintiff*, 537 F.3d 189-90.  The Court is not required to "use any particular formulation" provided that it "balance[s] the interests at stake."  *Id*. at 191 n.4.

First, unlike the typical case in which a party seeks to protect a legitimate privacy interest, the litigation here does not involve matters that are highly sensitive and of a personal nature.  Rather, it is only because Doe **chose** to make an infringing copy of the WT Videos and

*to post the Doe Video online* that there is any dispute here in the first place.  Having voluntarily chosen to make his actions a matter of public inquiry, he cannot now hide his infringement behind the cloak of "highly sensitive" and "personal" matters, *Simon*, 2014 U.S. Dist. LEXIS 27563, at *5, especially in light of his agreement with YouTube that the ISP would disclose his identity in response to a valid subpoena based on copyright infringement.

Doe has also failed to present any tangible evidence that disclosure of his identity will result in retaliatory harm to him.   As demonstrated above, his claims of doxing and disfellowshipping are "unsubstantiated speculation" contradicted by the facts.  *United States v. Pilcher*, 950 F.3d 39, 43 (2d Cir. 2020).  Nor is fear of disfellowshipping—essentially a "social stigmatization"—a valid basis upon which to proceed anonymously.  *See Doe v. Weinstein*, 2020 U.S. Dist. LEXIS 161497, at *8 (S.D.N.Y. Sep. 3, 2020).

More to point, the Court is constitutionally prohibited from making any determination as to the propriety of the Jehovah Witnesses' practice of disfellowshipping, which is not a legally cognizable "harm," but rather a protected exercise of the First Amendment's free exercise clause. *See Paul v. Watchtower Bible & Tract Soc.*, 819 F.2d 875, 883 (9th Cir. 1987) ("Jehovah's Witnesses' practice of shunning is protected under the first amendment of the United States Constitution").  As the Ninth Circuit explained in *Paul*, when "members of the Church . . . conclude[] that they no longer want to associate with [someone] . . .  [w]e hold that they are free to make that choice."  *Id*.  "Churches are afforded great latitude when they impose discipline on members or former members . . . . [R]eligious activities which concern only members of the faith are and ought to be free—as nearly absolutely free as anything can be."  *Id*.  Thus, even if Doe could establish that disfellowshipping was a likely consequence of disclosing his identity, the First Amendment prevents this Court from becoming entangled in a religious inquiry in order to

"protect" Doe from what the Jehovah Witnesses believe is a loving application of their religion.

Doe's unsubstantiated and unprotectable claims of injury are easily outweighed by the prejudice that will be caused WT if Doe's identity remains hidden. WT needs the information for legitimate enforcement purposes, including policing against repeat infringers, identifying the source of leaks of its unpublished works and securing its own site from unauthorized encroachments. Polidoro Decl. ¶ 13. As noted above, Doe's claim that he obtained the WT Videos from Cedars is demonstrably false. To the extent Doe was in fact involved in taking WT's copyrighted material before it was published, while lying about where he got it and touting its "early" disclosure, he is ill situated to seek equitable relief from this Court in protecting his identity due to his unclean hands. Nor should he be heard to complain when WT seeks to take appropriate steps to remedy the wrong by preventing future unauthorized leaks of its materials.

More broadly, WT is prejudiced in its ability to prosecute a case of copyright infringement. Its ability to develop necessary jurisdictional facts and potential material to impeach Doe's credibility is substantially hampered if it cannot confront Doe in a meaningful way during the discovery process. *N. Jersey Media Grp., Inc. v. Doe*, 2012 U.S. Dist. LEXIS 167317, at *21-23 (S.D.N.Y. Nov. 26, 2012) (impairment in discovery using a pseudonym "would be significant" and "[s]ignificant prejudice will also attend the plaintiff in the later stages of the proceeding, including the trial, when fact-finding will depend, among other things, on the credibility of the witnesses, and the defendant's use of a pseudonym would not mitigate that prejudice"). And to the extent WT may seek to avoid the burdens and expenses of litigation through an amicable resolution, its inability to have direct contact with Doe severely hampers the likely progress of any potential settlement discussions. *Doe v. Skyline Autos., Inc.*, 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (internal quotation marks omitted) ("Allowing Plaintiff to proceed

31653/000/3574339

anonymously would disadvantage Defendants at all stages of litigation, including settlement, discovery, and trial. Plaintiff's anonymity would make it more difficult to obtain witnesses and witness testimony, Defendants would have less leverage in settlement negotiations, and Defendants would not be able to fully and adequately cross-examine the Plaintiff").

Doe should be required to proceed in the regular way contemplated by the rules where he has failed to make any showing of harm, has already misled the Court as to the true state of facts and poses a continuing threat to WT's ability to enforce its intellectual property rights.

## **CONCLUSION**

Based on the foregoing, the Court should deny Doe's motion to quash and to proceed anonymously.

Dated: New York, New York
   October 27, 2020

COWAN, LIEBOWITZ & LATMAN, P.C.
By:  s/ Eric J. Shimanoff
Eric J. Shimanoff (ejs@cll.com)
Thomas Kjellberg (txk@cll.com)
Kieran G. Doyle (kgd@cll.com)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036
(212) 790-9200

Paul D. Polidoro (ppolidor@jw.org)
Watch Tower Bible and Tract
Society of Pennsylvania
100 Watchtower Drive
Patterson, NY 12563
(845) 306-1000

*Attorneys for Respondent Watch
Tower Bible and Tract Society of
Pennsylvania*