UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

DMCA Section 512(h) Subpoena to YOUTUBE (GOOGLE, INC.)

Case No. 7:18-mc-00268 (NSR)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND TO PROCEED ANONYMOUSLY

Dated: Brooklyn, New York
November 10, 2020

**FOSTER GARVEY P.C.**
By: Malcolm Seymour (MS-3107)
100 Wall Street, 20th Floor
New York, New York 10005-3708
(212) 965-4533
malcolm.seymour@foster.com

*Attorneys for Movant John Doe*

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ........ i

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. The Court May and Should Decide Fair Use as a Threshold Issue ........ 3

II. Drawing All Reasonable Inference in Watchtower's Favor, Movant Still Prevails on His Defense of Fair Use ........ 5

A. The User Video Was Not Monetized, Which Carries Little Weight Anyway ........ 5

B. Movant Has Been Forthcoming About the Source of the JW Video Footage, Which Is Not Dispositive of Fair Use ........ 6

C. Watchtower's After-the-Fact Registration of Four Copyrights for One Video Should Not Be Considered for Purposes of Measuring Substantiality of Use ........ 8

III. In the Alternative, the Court Should Grant Continued Leave to Proceed Anonymously ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

*Page*

***Cases***

*Arista Records, LLC v. Doe 3* ....................3, 5
604 F.3d 110 (2d Cir. 2010)

*Brownmark Films, LLC v. Comedy Partners*....................1, 4, 5
682 F.3d 687 (7th Cir. 2012)

*Campbell v. Acuff-Rose Music, Inc.*....................6
510 U.S. 569 (1994)

*Cariou v. Prince*....................1, 4, 8
714 F.3d 694 (2d Cir.2013)

*Castle Rock Entertainment v. Carol Publishing Group, Inc.* ....................6
150 F.3d 132 (2d Cir. 1998)

*Graham v. Prince*....................3
265 F.Supp.3d 366 (S.D.N.Y. 2017)

*Harbus v. Manhattan Institute for Policy Research* ....................4
Case No. 19-CV-6124 (ER), 2020 WL 1990866 (S.D.N.Y. Apr. 27, 2020)

*Hosseinzadeh v. Klein*....................4, 8
276 F.Supp.3d 34 (S.D.N.Y. 2017)

*Hughes v. Benjamin* ....................4, 6
437 F.Supp.3d 382 (S.D.N.Y. 2020)

*NXIVM Corp. v. Ross Institute*....................7, 8
364 F.3d 471 (2d Cir. 2004)

*Schwartzwald v. Oath Inc.* ....................3
Case No. 19-CV-9938 (RA), 2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020)

*Sealed Plaintiff v. Sealed Defendant*....................9
537 F.3d 185 (2d Cir. 2008)

*Sony Music Entertainment v. Does 1-40*....................5, 10
326 F.Supp.2d 556 (S.D.N.Y. 2004)

*TCA Television Corp. v. McCollum*....................6
839 F.3d 168 (2d Cir. 2016)

*Yang v. Mic Network, Inc.*......................................................................................................4, 5
405 F.Supp.3d 537, 548 (S.D.N.Y. 2019)

***Court Documents***

*Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton* ................................10
No. 00-1737 (U.S. Nov. 29, 2001)

***Rules, Statutes, Treatises, Misc., Etc.***

17 U.S.C. § 107...............................................................................................................................6

## INTRODUCTION

Movant John Doe respectfully submits this reply memorandum in further support of his motion ("Motion") to quash the subpoena ("Subpoena") issued herein and proceed anonymously.[1]

The relevant facts are largely set forth in the initial moving papers.[2] Watchtower's opposition pokes holes in some of these facts, but the disputes raised by its papers relate to collateral issues that fall by the wayside where, as here, the secondary use is "transformative as a matter of law." *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir.2013). The Court need only "take a fleeting glance" at the User Video and the JW Video to see that they are radically different works, and that the User Video mocks the JW Video for its substance, "low artistic sophistication and quality -- in other words, fair use." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 689 (7th Cir. 2012). Watchtower does not dispute the authenticity of the User Video and JW Video furnished to the Court. As such, the Court has the facts it needs to render a decision. Even if all inferences are drawn in Watchtower's favor on the collateral disputes raised by its opposition, the Court need only view the works side by side to conclude that the User Video makes transformative use of the JW Video. The Motion should be granted and the Subpoena should be quashed.

---

[1] Watchtower argues that the Motion should be denied because it does not repeat Movant's initial request for an extension of time in which to submit his Motion. Undersigned counsel interpreted the Court's August 27, 2020 (Dkt. No. 11) Memorandum Endorsement, authorizing this Motion, as implicitly granting this relief. If this interpretation was in error, counsel relies on the facts set forth in his August 22, 2018 letter to the Court (Dkt. No. 6, pp. 2-3) as justification for Movant's minimal delay in bringing the Motion. Watchtower argues that the Court should ignore Movant's constitutional arguments because (1) YouTube notified Movant just five days before the Subpoena's return date that the Subpoena had issued and (2) it took Movant, a *pro se* foreign national, five weeks to locate pro bono counsel and submit a pre-motion letter. Watchtower had not filed a motion to compel within that five-week span and was not aggressively pursuing enforcement. The absence of prejudice to Watchtower is even clearer now than it was two years ago. Once the Court had set a briefing schedule for this Motion, Watchtower requested two additional weeks to submit opposition papers, and agreed to a one-week extension for Movant's reply. Dkt. No. 15. Meanwhile, the User Video has been removed from YouTube since 2018 and remains offline. Watchtower's transparent attempt to suppress Movant's First Amendment claims on a technicality, without any consideration of these equities or its own delays, is beneath an organization of its stature.

[2] To address and resolve certain factual disputes raised in Watchtower's opposition papers, the Movant himself has subscribed an additional Reply Declaration of John Doe in Support of Motion to Quash Subpoena and Proceed Anonymously ("Doe Decl."). Capitalized terms not defined herein have the same meaning defined in Movant's Memorandum of Law in Support of Motion to Quash and Proceed Anonymously (the "Initial Brief") and the Declaration of Malcolm Seymour in Support of Motion to Quash and Proceed Anonymously (the "Seymour Decl.").

Watchtower inflates these factual disputes to postpone the Court's consideration of fair use until summary judgment, or later. Watchtower supports its position with dated case law, ignoring the recent trend in this Court and others to "dispose of . . . copyright infringement action[s] based on the fair use affirmative defense while avoiding the burdens of discovery and trial." *Id*. This trend is especially salient here, where enforcement of a de-anonymizing Subpoena would inflict First Amendment harm if Movant's use is indeed fair. In these circumstances, justice delayed is justice denied, and there is constitutional urgency to decide fair use as a threshold matter.

While Watchtower urges the Court to defer determination of Movant's fair use defense, its endgame is unclear. Watchtower claims it operates on donations and prefers to resolve copyright disputes efficiently without litigation.[3] But it has not responded to Movant's offer to receive a cease-and-desist letter through his undersigned counsel.[4] Watchtower claims it has not pursued enforcement action in other cases because some alleged infringers "were located outside the jurisdiction of the U.S. courts."[5] But Movant's videos show that he lives in the United Kingdom,[6] and Watchtower still seems intent on plunging the parties into costly cross-border litigation. This litigation could be avoided if the Court adjudicated fair use here and now, but Watchtower struggles mightily to resist this obviously efficient result. Inconsistencies like these do nothing to ease Movant's concerns about Watchtower's objectives in pursuing this Subpoena.

Movant's excerption of the JW Video was fair use and, consequently, protected speech. Movant has a right to make that speech anonymously. The defense of this right is one of the reasons the Second Circuit and other courts have adjudicated fair use before enforcing DMCA

[3] *See* Declaration of Paul D. Polidoro in Opposition to Motion to Quash Subpoena and Proceed Anonymously ("Polidoro Decl."), pp. 6-7, ¶¶ 45-52.
[4] *See* Initial Brief, p. 20, n. 55.
[5] *See* Polidoro Decl., p. 7, ¶ 58.
[6] A fact that Movant has confirmed. *See* Doe Decl., p. 3, ¶ 10.

identification subpoenas. This Court can determine from the underlying works that the User Video is of a different purpose and character than the JW Video. The JW Video promotes worship. The User Video promotes skepticism. Watchtower's claim that Movant's "commentary appears to be more along the lines of simply 'watch this,'"[7] is remarkably tone deaf. It is rare that more than a few seconds pass without Movant mocking or criticizing the JW Video. No reasonable viewer could conclude that the User Video "usurps the market" for the original. It is transformative as a matter of law, and the Court should deny enforcement of the Subpoena. Additional discovery would not shed meaningful light on the Court's analysis, as the same result would obtain even if every factual dispute suggested by the opposition were resolved in Watchtower's favor.

Wherefore, and for the reasons set forth below, Movant respectfully requests that the Court quash the Subpoena or, in the alternative, grant Movant leave to proceed anonymously.

## ARGUMENT

### I. The Court May and Should Decide Fair Use as a Threshold Issue

The parties do not dispute that this case is controlled by *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), which considered and decided a defense of fair use before denying a motion to quash a DMCA subpoena. *Id.* at 123-24. Watchtower admits the law permits dismissal based on a defense of fair use, but contends that this possibility is merely "theoretical," and that courts do not in fact dismiss on such grounds.[8] This argument is flawed in three respects:

First and most pointedly, it is no longer true. The opposition cites *Graham v. Prince*, 265 F.Supp.3d 366 (S.D.N.Y. 2017) for the proposition that "there is a dearth of cases granting a motion to dismiss on the basis of fair use." *Id* at 377. Whatever the accuracy of that description in 2017, it is a misstatement of the law as it stands today. *See Schwartzwald v. Oath Inc.*, Case

[7] Memo of Law in Opposition to Motion to Quash Subpoena and to Proceed Anonymously ("WT Memo."), p. 2.
[8] WT Memo., p. 11.

No. 19-CV-9938 (RA), 2020 WL 5441291, at *3 (S.D.N.Y. Sept. 10, 2020) (dismissing infringement claim on 12(b)(6) motion by comparing photographs); *Hughes v. Benjamin*, 437 F.Supp.3d 382, 394 (S.D.N.Y. 2020) (same, comparing videos); *Harbus v. Manhattan Institute for Policy Research,* Case No. 19-CV-6124 (ER), 2020 WL 1990866 at *9 (S.D.N.Y. Apr. 27, 2020); *Yang v. Mic Network, Inc.*, 405 F.Supp.3d 537, 548 (S.D.N.Y. 2019).

Second, even in 2017, this statement was only procedurally accurate, as courts had often determined fair use "as a matter of law," based solely on a comparison of underlying works. *See Cariou*, *supra*, 714 F.3d at 707-08 (fair use determined as a matter of law by "looking at the artworks and the photographs side-by-side"); *Hosseinzadeh v. Klein*, 276 F.Supp.3d 34, 40, 45 (S.D.N.Y. 2017) (dismissing infringement claim because "[t]he Court's review of the . . . videos makes it clear" that defendants' video was fair use). The trend toward deciding fair use at the pre-discovery stage is a reaction to the old and wasteful practice of taking discovery, only to later adjudicate fair use based on underlying works alone. The Seventh Circuit's decision in *Brownmark*, which affirmed a district court's pre-answer dismissal on fair use grounds by converting the motion to dismiss into one nominally for summary judgment, is illustrative:

> This is a case about how a court may dispose of a copyright infringement action based on the fair use affirmative defense while avoiding the burdens of discovery and trial. . . . This video is a parody. . . [that] recreates a large portion of the original version, using the same angles, framing, dance moves and visual elements. . . . The district court concluded that "[o]ne only needs to take a fleeting glance at the South Park episode" to determine that its use of [plaintiff's] video is meant "to lampoon . . . low artistic sophistication and quality"—in other words, fair use. . . . [T]he district court required only the two videos to adjudicate this issue, especially in light of [plaintiff's] failure to make any concrete contention that the South Park episode reduced the financial returns from the original WWITB video.

*Brownmark*, *supra*, 682 F.3d at 689, 692.

Third, Watchtower's legal authorities are not wholly apposite to this case. Movant raises fair use as a defense to a Subpoena which, if wrongly enforced, would inflict constitutional harm.

"Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns." *Sony Music Entertainment v. Does 1-40*, 326 F.Supp.2d 556, 563 (S.D.N.Y. 2004). In each of the cases cited by Watchtower, the defendant's identity was already known, and no risk of constitutional injury was present. Here, a refusal to decide fair use before enforcing the Subpoena would moot this case by denying Movant the very right he seeks to vindicate: anonymous speech.

In *Arista*, the Second Circuit denied the infringers' motion to quash only after finding that piracy of copyrighted songs through file-sharing services was not fair use. *See Arista*, 604 F.3d at 124 (applying fair use factors and rejecting defense on the merits). *Arista* confronted and decided this issue at the threshold, due to of the constitutional repercussions of delaying adjudication. Especially because it "only needs to take a fleeting glance" at the underlying works to determine that the User Video is fair use, this Court should do the same. *Brownmark*, *supra*, 682 F.3d at 689.

## II. Drawing All Reasonable Inference in Watchtower's Favor, Movant Still Prevails on His Defense of Fair Use

Watchtower devotes much of its opposition to challenging Movant's characterization of collateral factual issues. Not all of these disputes are genuine, but even if they were, and each such dispute were resolved in Watchtower's favor, Movant's defense of fair use would still succeed. *See Yang*, *supra*, 405 F.Supp.3d 548 ("drawing all reasonable inferences in Plaintiff's favor, it is evident . . . that Defendant's use was fair as a matter of law").

### A. The User Video Was Not Monetized, Which Carries Little Weight Anyway

Watchtower submits screenshots from Movant's present-day YouTube channel to challenge his claim that he did not monetize the User Video.[9] Movant has acknowledged that he

[9] *See* Polidoro Decl., ¶ 26, Exh. G.

currently monetizes his channel, and has only stated that he did not monetize the User Video.[10] The screenshots shown do not represent Movant's YouTube monetization during the brief window in 2018 when the User Video was available. From February 21 through June 19, 2018, Movant was unable to monetize his YouTube channel because he did not meet viewership requirements.[11]

It is hardly clear that screenshots from two years after the fact are probative enough of any question to raise genuine issues of fact. But even if they are, the Court could resolve those questions in Watchtower's favor and still find fair use. The "commercial" nature of a secondary work is of vanishing significance where the new work makes transformative use of the original:

> Congress identified "criticism, comment, news reporting, teaching, scholarship, and research" as illustrative purposes of a fair use. . . . [B]ecause nearly all of the illustrative uses listed . . . are generally conducted for profit in this country, . . . courts "do not give much weight to the fact that the secondary use was for commercial gain." . . . Instead, the critical question when applying the first fair use factor is whether the new work is "transformative."

*Hughes*, *supra*, 437 F.Supp.3d at 390 (*quoting* 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994); *TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016); *Castle Rock Entertainment v. Carol Publishing Group, Inc.*, 150 F.3d 132, 142 (2d Cir. 1998)) (other internal citations omitted). The dispute over monetization is thus a red herring.

**B. Movant Has Been Forthcoming About the Source of the JW Video Footage, Which Is Not Dispositive of Fair Use**

Watchtower emphasizes inaccuracies in Movant's description of how he acquired the JW Video, and Movant has clarified these facts in his accompanying declaration.[12] The initial Motion papers stated that Movant obtained this footage from the Cedars Video, which Movant did not correct because he believed it to be essentially true.[13] It is more precise to say that Movant

[10] *See* Seymour Decl., p. 3, n. 8.
[11] *See* Doe Decl., pp. 2-3, ¶ 8.
[12] *See* Doe Decl., pp. 1-2, ¶¶ 4-6.
[13] *See* id.

obtained high resolution footage from a member of the John Cedars team, shortly before with the release of the Cedars Video – a detail that Movant did not think significant, because he believed that the footage he had received was wholly contained within the Cedars Video. Movant denies that he "misrepresented to the Court how and from whom he obtained" the JW Video.[14] In fact, his pre-motion letter correctly stated that he "obtained the allegedly infringing footage through another YouTube user . . . who leaked the JW Video prior to its official release."[15]

Watchtower will argue that these inconsistencies raise questions about the provenance of the footage reproduced in the User Video. But Watchtower does not connect to dots to explain how these peccadillos might defeat a finding of fair use. Watchtower suggests they relate to "the propriety of [Movant's] conduct," but Watchtower already claims Movant acted in bad faith by using the JW Video prior to official publication – an undisputed fact about which Movant has been completely candid.[16] Watchtower does not explain how Movant's acquisition of the JW Video in some other undiscovered way could sway the fair use calculus, especially in light of the leading authority on this issue, *NXIVM Corp. v. Ross Institute*, 364 F.3d 471 (2d Cir. 2004). The opposition does not mention, much less distinguish *NXIVM*, and its avoidance of this case is telling.

In *NXIVM*, the defendants obtained copies of an unpublished manual from a leak inside the organization, violating non-disclosure agreements. While acknowledging that the defendants' backdoor acquisition of the manual was in bad faith, the Second Circuit concluded that the ends of investigative journalism justified these means. "[T]he bad faith of a defendant is not dispositive of a fair use defense. . . . [W]hile the subfactor pertaining to defendants' good or bad faith must be weighed, . . . we find that the first factor still favors defendants in light of the transformative nature

[14] WT Memo., p. 13.
[15] Dkt. No. 6, p. 2.
[16] *See* id.; Seymour Decl., pp. 2-3, ¶¶ 9, 13.

of the secondary use as criticism." *Id.* at 479. The opposition is altogether silent on *NXIVM*. Even if Watchtower took discovery on the issue of acquisition, it has not explained how the facts it might discover would command a different result in light of *NXIVM*'s safe harbor for transformative, critical use of leaked materials. Watchtower has cited no post-*NXIVM* authority, and Movant is aware of none, that rejected a fair use defense because of "bad faith" after a comparison of the underlying works revealed use that was "transformative as a matter of law." *Cariou*, *supra*, 714 F.3d at 707. The two works are so different that it cannot be plausibly argued the User Video usurped the market for the JW Video or "scooped" Watchtower's right of first publication. The source of the footage thus carries little weight and should not prevent a decision in Movant's favor.

### C. Watchtower's After-the-Fact Registration of Four Copyrights for One Video Should Not Be Considered for Purposes of Measuring Substantiality of Use

Watchtower argues that the JW Video comprises four distinct works, copyrights for which were registered on August 3, 2018.[17] Movant published the User Video on May 18, 2018,[18] and Watchtower published the JW Video (in the form Movant has provided to the Court) as a single work in July 2018.[19] When Movant made the User Video, and when the JW Video was first published, viewers were not on notice that Watchtower considered its film to be more than one work. It would be inequitable to measure "substantiality" for purposes of the third fair use element by the length of the un-demarcated video segments that Watchtower copyrighted later.

Again, this Court has found fair use even where a "great deal of plaintiff's work was copied, but such copying was plainly necessary to the commentary and critique." *Hosseinzadeh*, *supra*, 276 F.Supp.3d at 46. Watchtower claims that the User Video reproduced "approximately 90% of

---

[17] *See* Polidoro Decl., pp. 1-2, ¶ 5; p. 4, ¶ 21.
[18] *See* id., p. 3, ¶ 13.
[19] *See* Seymour Decl., p. 3, ¶ 13; Exh. 12.

the visual aspects and more than 50% of the audio aspect of the Never Alone music video"[20] (which was only retroactively identified as a separate work). Watchtower misrepresents that Movant's commentary is limited to "ridiculing" the video's production value.[21] Even if these were the percentages relevant to the fair use analysis – which Movant disputes – this Court has found fair use under similar circumstances. *See id.* at 40 (defendant's 14-minute video used three minutes and fifteen seconds of plaintiff's five-minute and twenty-four second video, but "was harshly critical of [plaintiff's] video, and includes mockery of plaintiff's performance").

Watchtower exaggerates these factual quibbles to delay the Court's consideration of fair use, but the transformative nature of the User Video is readily apparent from a comparison of the two works, and the Court should decide this issue now, as a matter of law.

## III. In the Alternative, the Court Should Grant Continued Leave to Proceed Anonymously

If the Court wishes to allow discovery before adjudicating the question of fair use, it would be a prudent exercise of the Court's equitable powers to preserve Movant's anonymity until this defense can be finally determined. Movant has suggested alternatives that would permit this case to proceed without inflicting the "injury litigated against" – a loss of anonymity. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (internal quotations omitted). For one, the Court could hold this Motion in abeyance and allow limited discovery of facts necessary to resolve the question of fair use, without requiring disclosure of Movant's identity. Movant has appeared in this proceeding and would not need to be served with further process. Movant has also offered to receive a cease-and-desist letter through his undersigned counsel.

Watchtower's arguments against anonymity are unpersuasive and hypocritical.

[20] WT Memo., p. 4.

[21] A cursory viewing of the User Video belies this statement. *See, e.g.*, Seymour Decl., Exh. 11 (User Video), at 9:13 (overdubbing music video with criticism of JW disciplinary practices); 9:44 (commenting on JW's stigmatization of beards); 9:50 (commenting on JW practice of disfellowshipping).

Watchtower contends that Movant has no expectation of privacy when publishing videos to an online forum like YouTube. But unless and until he is found to have infringed Watchtower's copyright – which this Court decides, not Watchtower -- Movant has the same expectation of privacy when publishing pseudonymously on YouTube that Watchtower's missionaries had when they canvassed door-to-door in the Village of Stratton. *See* Br. for Pet'rs, 17, *Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, No. 00-1737 (U.S. Nov. 29, 2001) (extolling importance of anonymous discourse and warning against "persecution of those engaged in the secret distribution of information"); *Sony Music Entm't, Inc.*, *supra*, 326 F.Supp.2d at 562 ("[T]he First Amendment's protection extends to the Internet. . . . Internet anonymity facilitates the rich, diverse and far ranging exchange of ideas") (internal quotations and citations omitted).

Movant does not wish to prevent JWs from practicing their religion, or even from controversial practices like disfellowshipping. He only seeks to prevent Watchtower's misuse of the DMCA subpoena mechanism to thwart protected speech. The Court may acknowledge Movant's fear of disfellowshipping as cognizable harm without restricting Watchtower's ability to engage in that practice, just like it affords anonymity to prevent "reputational harm" without preventing speakers from making reputationally harmful remarks. Because disclosure of Movant's identity would moot this case by inflicting the constitutional injury litigated against, and prejudice to Watchtower could be avoided by an appropriate equitable remedy, the Court should grant Movant leave to proceed anonymously if it does not quash the Subpoena.

## **CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Subpoena be quashed or, in the alternative, that Movant be allowed to remain anonymous in this and any subsequent proceedings, and such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
November 10, 2020

FOSTER GARVEY P.C.

By: /s/ Malcolm Seymour
Malcolm Seymour (MS-3107)
100 Wall Street, 20th Floor
New York, New York 10005-3708
(212) 965-4533
malcolm.seymour@foster.com

*Attorneys for Movant John Doe*