USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/18/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

DMCA Section 512(h) Subpoena to
YOUTUBE (GOOGLE, INC.)

7:18-mc-00268 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

This action arises out of a subpoena request under the Digital Millennium Copyright Act ("DMCA") to identify an alleged infringer of copyrights held by Watch Tower Bible and Tract Society of Pennsylvania ("Watch Tower"), an organization that publishes religious materials for Jehovah's Witnesses. Movant John Doe, a lapsed Jehovah's Witness who publishes satirical videos critical of the religious denomination on YouTube, moves to quash the subpoena issued on June 19, 2018, or, in the alternative, for leave to proceed anonymously. (ECF No. 19.) For the following reasons, the Court GRANTS Movant's motion to quash the subpoena.

**BACKGROUND**

**I.      The Original Works**

Between August 2017 and January 2018, Watch Tower created the following four original works, each of which it subsequently registered with the U.S. Copyright Office on August 3, 2018: (i) "Never Alone" (Copyright Registration No: PA0002131662); (ii) "Allan Boyle: Deep Study for a Clearer Picture" (Copyright Registration No: PA0002131659); (iii) "Keep a Tight Grip—Through Effective Personal Study" (Copyright Registration No: PA0002131853); and (iv) "Mark Noumair: Keep 'a Tight Grip on the Word of Life'" (Copyright Registration No: PA0002131665). (*See* Polidoro Decl., Ex. B, ECF No. 20-2.). Watch Tower further published these four works as a compilation with additional footage titled "JW Broadcasting – July 2018," which it also registered

with the U.S. Copyright Office on August 10, 2018 (Copyright Registration No: PA0002132168). (*See id.*, Ex. C, ECF No. 20-3.).

The subject matter of these works is derived from the Bible and the teachings of Jehovah's Witnesses, but they all consist of creative, expressive, and non-factual works. (*See id.* ¶ 7, ECF No. 20.) For example, "Never Alone" is a music video depicting the story of Joseph from the Book of Genesis with musical and actor performances, costumes, sets, lighting, and sound design. (*See* JW, *Never Alone*, https://www.jw.org/en/library/videos/#en/mediaitems/VODOriginalSongs/pub-osg_43_VIDEO (last visited Jan. 13, 2022).) The work titled "Allan Boyle: Deep Study for a Clearer Picture" depicts an interview of the late artist, who discusses how studying the Bible helped him create his religious artwork. (*See* JW, *Allan Boyle: Deep Study for a Clearer Picture*, https://www.jw.org/en/library/videos/#en/mediaitems/VODIntExpArchives/pub-jwb_201807_4_VIDEO (last visited Jan. 13, 2022).) The work titled "Keep a Tight Grip— Through Effective Personal Study" depicts several Jehovah's Witnesses discussing their techniques to study the Bible and the benefits they obtain from doing so. (*See* JW, *Keep a Tight Grip—Through Effective Personal Study*, https://www.jw.org/en/library/videos/#en/mediaitems/VODBiblePrinciples/pub-jwb_201807_6_VIDEO (last visited Jan. 13, 2022).) The work titled "Mark Noumair: Keep 'a Tight Grip on the Word of Life'" depicts Mr. Noumair discussing why studying the Bible is important for Jehovah's Witnesses and the methods taught at their missionary Gilead School to do so properly. (*See* JW, *Mark Noumair: Keep "a Tight Grip on the Word of Life"*, https://www.jw.org/en/library/videos/#en/mediaitems/StudioTalks/pub-jwb_201807_2_VIDEO (last visited Jan. 13, 2022).) And finally, the JW Video is a fifty-three-minute compilation of the previous four works presented as a single broadcasting program for July 2018, which is part of a

series of monthly programs for Watch Tower's viewers. (*See* JW, *JW Broadcasting – July 2018*, https://www.jw.org/en/library/videos/#en/mediaitems/StudioMonthlyPrograms/pub-jwb_201807_1_VIDEO (last visited Jan. 13, 2022) [hereinafter, the "JW Video"].)

II.     **The Allegedly Infringing Work**

Under the pseudonym of "Kevin McFree," Movant publishes videos on YouTube featuring stop-frame Lego animations set in a fictitious village called "Dubtown" that satirize and criticize the practices of Jehovah's Witnesses. (*See* Seymour Decl. ¶¶ 6, 8, Ex. 5, ECF Nos. 18, 18-5.) On May 18, 2018, Movant posted a video titled "DUBTOWN – Family Worship July Broadcast" (hereinafter, the "Dubtown Video"). (*See id.* ¶ 9.) This thirteen-minute video depicts Lego characters viewing excerpts of the JW Video (mainly those portraying Watch Tower's other four works), over which Movant interjected, superimposed, and overdubbed parodic commentary. (*See id.* ¶ 11, Ex. 11, ECF No. 18-11.) Among other topics, the Dubtown Video criticizes Jehovah's Witnesses' depictions of violence against women, the removal of a man of African descent from the denomination's iconography, the denomination's attitude toward technology, and its attitude toward outside academic pursuits among its followers. (*See id.*, Ex. 11.)

III.    **Procedural History**

After learning about the Dubtown Video, Watch Tower sent a copyright infringement DMCA takedown notice to Google on June 6, 2018, demanding removal of the Dubtown Video from YouTube.[1] (*See* Polidoro Decl. ¶ 27.) Google subsequently removed the Dubtown video from YouTube's platform. (*See id.* ¶ 28.)

---

[1] The DMCA creates a "notice" and "takedown" regime under which a person who thinks that his material is being displayed on the internet in violation of copyright law can send a notice to an internet service provider. *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2, at *3 n.2 (N.D. Cal. July 8, 2011).

On June 15, 2018, Watch Tower initiated this action by requesting the Court to issue a DMCA subpoena to YouTube to identify[2] who owns the Kevin McFree Account. (ECF No. 1.) On June 19, 2018, the Court granted the request and directed the Clerk of Court to issue the subpoena for YouTube (Google Inc.). (ECF No. 4.) On August 22, 2018, counsel appeared on behalf of Movant and requested leave to file a motion to quash the subpoena, (ECF Nos. 5 & 6), a request that Watch Tower opposed five days later (ECF No. 7). On August 27, 2020, the Court granted Movant leave to file his proposed motion. (ECF No. 11.) On November 10, 2020, the parties filed their respective briefing: Movant filed the instant motion (ECF No. 17) with its accompanying exhibits (ECF No. 18) and a memorandum in support ("Motion," ECF No. 19), as well as his reply ("Reply," ECF No. 24) with its accompanying exhibits (ECF Nos. 22 & 23); and Watch Tower its opposition ("Response in Opposition," ECF No. 19) with its accompanying exhibits (ECF No. 20).

**STANDARD**

Rule 45 provides that a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies" or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

A movant seeking a protective order or to quash a subpoena bears the burden of persuasion. *See Dove v. Atl. Capital Corp.,* 963 F.2d 15, 19 (2d Cir. 1992); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) ("[T]he party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome."). "A

---

[2] Section 512(h) of the DMCA allows a copyright holder to "request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection." 17 U.S.C. § 512(h)(1).

determination to grant or deny a motion for a protective order or a motion to quash a subpoena is discretionary." *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (citing *Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir.1973); *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 68 (2d Cir. 2003)).

"The Supreme Court has recognized that the First Amendment provides protection for anonymous speech." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (collecting cases). "The Court has also recognized that the Internet is a valuable forum for the exchange of ideas." *Id*. "To the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity." *Id.* (citing Fed. R. Civ. P. 45(c)(3)(A) (the "issuing court must quash or modify a subpoena" when it "requires disclosure of privileged or other protected matter, if no exception or waiver applies")). "The First Amendment does not, however, provide a license for copyright infringement." *Id.* "Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." *Id.*

Courts consider the following factors when determining whether to grant a motion to quash based on a qualified privilege protecting anonymity:

> (1) the concreteness of the plaintiff's showing of a *prima facie* claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy.

*Arista*, 604 F.3d at 119 (cleaned up). Ultimately, decisions about the reasonableness and burden of a subpoena are left to the sound discretion of the court. *See Malibu Media, LLC v. Doe*, No. 14-CV-4808 (JS) (SIL), 2016 WL 4574677, at *2 (E.D.N.Y. Sept. 1, 2016).

**DISCUSSION**

By his motion, Movant argues that the Court should quash the subpoena because (1) Watch Tower cannot state a valid claim of copyright infringement, particularly because the Dubtown Video makes fair use of Watch Tower's works; and (2) in the absence of fair use, Watch Tower has misrepresented the true purpose of the subpoena—namely, to identify Movant to "disfellowship him as an apostate." (Mot. at 13–23.) Alternatively, if the Court does not quash the subpoena, Movant requests the Court permission to appear anonymously in future proceedings for fear of being ostracized, shunned, or disfellowshipped by the denomination's community for voicing criticisms or doubts about the organization.[3] (*Id.* at 23–26.)

In opposition, Watch Tower contends that the Court must deny Movant's motion based on either of two independent grounds: (i) the motion's untimeliness; and (ii) the *Arista* factors support sustaining the subpoena. (Resp. in Opp'n at 14–28.) Watch Tower further ontends that the Court should deny Movant's request to proceed anonymously because Movant fails to show the need to protect a legitimate privacy interest, and because it would be prejudiced in its ability to prosecute a case of copyright infringement against him. ((*Id.* at 28–31.)

Accordingly, the Court will address whether Movant satisfies his burden to show that the subpoena is unduly burdensome and will only consider the merits of Movant's request to proceed anonymously if the subpoena is sustained.

**I.  The Motion's Timeliness**

As a preliminary matter, Watch Tower argues that the Court must deny Movant's motion as untimely because he first requested leave to file the instant motion on August 22, 2018—over a

---

[3] *See Paul v. Watchtower Bible & Tract Society of New York, Inc.*, 819 F.2d 875, 876–77 (9th Cir. 1987) (detailing the Jehovah's Witnesses' rules and practices of disfellowship and shunning).

6

month after the subpoena's responsive deadline of July 15, 2018. (*Id.* at 14–16.) But Movant contends there is good cause for the Court to overlook the motion's untimeliness. Specifically, Movant avers that YouTube notified him about the subpoena just five days before its return date, and that it took him five weeks to locate *pro bono* counsel after YouTube referred him to the Electronic Frontier Foundation, which in turn referred him to his current counsel. (Reply at 1 n.1 (citing ECF No. 6).)

"It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena." *Est. of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006); *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 561 (S.D.N.Y. 2004); *In re Welling*, 40 F. Supp. 2d 491, 491 (S.D.N.Y. 1999). Still, "district courts have broad discretion over the decision to quash a subpoena, and a number of courts in this Circuit have exercised their discretion to consider motions to quash that were not timely filed within the meaning of Rule 45 and applicable case law." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y. 2018) (citations omitted), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) (permitting untimely motion to quash where there was no evidence of prejudice to the other side); *Grigsby & Assoc., Inc. v. Rice Derivative Holdings, L.P.*, No. 00 Civ. 5056, 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (considering untimely motion to quash because circumstances, including clearly overbroad nature of subpoena, warranted overlooking timeliness issue); *Olszewski v. Bloomberg L.P.*, No. 96 Civ. 3393, 2000 WL 1843236, at *4 (S.D.N.Y. Dec.13, 2000) (considering untimely motion to quash because movant was "entitled to protection from discovery of his confidential health and disciplinary records").

While the motion is indisputably untimely, the Court agrees that good cause exists to overlook Movant's delay in filing it. The record shows that Movant first received notice of the

7

subpoena five days before its return date and then diligently sought counsel to contest it in good faith. (*See* ECF No. 6 (pre-motion letter dated Aug. 22, 2018).) Besides, Watch Tower raises no claim of prejudice resulting from the delay; much less does the record support a finding of the same, particularly because, as Movant avers, Watch Tower failed to aggressively pursue the subpoena's enforcement within the delay period. (*See* Reply at 1, n.1.) In view thereof, the Court now proceeds to analyze the *Arista* factors based on the record before it.

## II.     The *Prima Facie* Case for Copyright Infringement

The parties do not dispute that Watch Tower holds the copyrights to the protected works that Movant used in creating the Dubtown Video. (*See* Resp. in Opp'n at 16.) Rather, their disagreement lies on whether Movant made fair use of Watch Tower's works in creating the Dubtown Video. Specifically, Movant contends that he made non-commercial, critical, and transformative use of Watch Tower's works in creating the Dubtown Video. (Mot. at 17.) In contrast, Watch Tower argues that the Court should decline to address fair use here based on the "factually deficient record" at this stage because courts generally do not address fair use until the summary judgment phase. (Resp. in Opp'n at 17–18.) Watch Tower further argues that even if the Court decides to address the issue, the fair use inquiry favors sustaining the subpoena because (1) Movant "unlawfully obtained" Watch Tower's works before publication and (2) the Dubtown Video is commercial in nature and substantially uses Watch Tower's works quantitively and qualitatively with little or no transformation. (*Id.* at 18–23.) After reviewing the record, the Court concludes that Movant made fair use of Watch Tower's works.

"The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista*, 604 F.3d at 117 (citing 17 U.S.C. § 106). "To establish a *prima facie*

case of copyright infringement, a plaintiff must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Warner Bros. Entm't Inc. v. RDR Books,* 575 F. Supp. 2d 513, 533 (S.D.N.Y. 2008) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). A defendant is deemed to have copied constituent elements of the plaintiff's work where "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)).

"The defendant can defeat a *prima facie* showing of infringement," however, "by proving that the doctrine of 'fair use' permits" his or her "employment of the plaintiff's [work]." *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003); *see* 17 U.S.C. § 107 (codifying the common-law fair use defense). That is because fair use "allows the public to use not only facts and ideas contained in a copyrighted work, but also expression itself in certain circumstances." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003); *see also Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 432–33 (1984) (copyright law "has never accorded the copyright owner complete control over all possible uses of his work"). Put another way, as the Ninth Circuit has noted: "[f]air use is not just excused by the law, it is wholly authorized by [it]." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016). Hence, "'anyone who . . . makes a fair use of the work is not an infringer of the copyright with respect to such use.'" *Id.* at 1152 (alterations omitted) (quoting *Sony Corp.*, 464 U.S. at 433).

"Consequently, if the fair use inquiry demonstrates that [Movant] is not an infringer of Watch Tower's copyrighted works, [then] the subpoena must be quashed." *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 883 (N.D. Cal. 2020). "The only authorized purpose for the

subpoena under the DMCA was to discover his identity as an alleged copyright infringer to protect Watch Tower's copyrights." *Id.* (citing 15 U.S.C. § 512(h)(2)(C) (requiring "a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title")). Simply put, "[i]f [Movant] establishes that he made fair use of the copyrighted works, no claim of copyright infringement could plausibly be alleged against him, and the subpoena would not be authorized under the DMCA." *Id.*

Accordingly, the Court readily rejects Watch Tower's argument that it should not address fair use at this stage based on a "factually deficient record." To begin, Watch Tower neither disputes the authenticity of the copies of its works nor of the Dubtown Video currently before the Court. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." (internal quotation marks and citations omitted)); *accord Hughes v. Benjamin*, 437 F. Supp. 3d 382, 389 (S.D.N.Y. 2020) (dismissing complaint pursuant to Rule 12(b)(6) based on fair use defense after conducting a side-by-side analysis of the two works attached to the complaint).

And while it attempts to raise purported factual disputes in the record (*i.e.*, how Movant obtained Watch Tower's works and whether he monetized the Dubtown Video on YouTube (*see* Resp. in Opp'n at 18), Watch Tower ignores that Movant submitted declarations in which he effectively agrees with it on the facts or clarifies the record. (*Compare* Resp. in Opp'n at 12 ("[Movant] avers he obtained all portions of [Watch Tower's works] that he reproduced in the [Dubtown] Video from a third-party video posted on YouTube on April 4, 2018 by "John Cedars"

10

. . . . However, this claim is demonstrably false. Certain portions of [Watch Tower's works] that were replicated in the [Dubtown] Video . . . do not appear in the Cedars Video." (emphasis omitted)) *and id.* at 18 ("Many of Movant's videos are monetized by Google Ads and [Movant] has created a specific video touting Google Ads and soliciting contributions to his videos.") *with* John Doe Decl. ¶ 5, ECF No. 22 ("Watchtower is correct that I did not directly obtain the Watchtower footage in my video from the John Cedars' video itself. I obtained the footage from John Cedars' production team (for a higher picture quality) shortly before the release of the John Cedars video.") *and id.* ¶ 8 ("For the period from February 21, 2018 through June 19, 2018, my channel was not monetised due to a Youtube policy that required certain minimum viewership for monetisation. I did not meet those requirements until June 19, 2018. By the time I started monetising my channel, the [Dubtown Video] had already been taken down."); *see also* ECF No. 6 (pre-motion letter dated Aug. 22, 2018) (stating that Movant "obtained the allegedly infringing footage through another YouTube user . . . who leaked the JW Video prior to its official release.")). Besides, Watch Tower fails to argue that these declarations are inadmissible, *see* Fed. R. Civ. P. 56(c)(4) (regarding the admissibility of declarations at the summary judgment stage), or to sufficiently controvert the same.

Indeed, the Court finds Watch Tower's position surprising "given that Watch Tower was required to evaluate fair use before sending its take-down notice to [YouTube] . . . , and that Watch Tower and its attorney represented they had done the same[.]" *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 886 (citing *Lenz*, 815 F.3d at 1153 (holding that "a copyright holder must consider the existence of fair use before sending a takedown notification under § 512(c)); (*see also* ECF No. 1-3 ("I have a good faith belief that use of the materials in the manner complained of is not authorized by the copyright owner, its agent, or the law.). As such, Watch Tower is "not well

11

situated to say now that the inquiry should wait." *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 886 (noting that Watch Tower made the same argument in opposing a similar motion to quash). The Court now proceeds to determine whether Movant made fair use of the works here.

In undertaking a fair use analysis, the Court considers the following non-exhaustive list of factors set forth in 17 U.S.C. § 107:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

As the Second Circuit has explained, "the four listed statutory factors in § 107 guide but do not control [the] fair use analysis and 'are to be explored, and the results weighed together, in light of the purposes of copyright." *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994)). The ultimate question is "whether the copyright law's goal of 'promoting the Progress of Science and useful Arts' . . . would be better served by allowing the use than by preventing it." *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) (quoting *Castle Rock Entm't*, 150 F.3d at 141).

A.   Purpose and Character of Use

The first factor in the fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). The focus of this analysis asks "whether the new work merely supersedes the objects of the original creation or instead adds something new." *Campbell*, 510 U.S. at 579 (internal quotations omitted). The more "transformative" the new work, the less the significance of the factors that weigh against fair use, such as use of a commercial nature. *Id.*; *accord Blanch v. Koons,*

467 F.3d 244, 254 (2d Cir. 2006); *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 546 (S.D.N.Y. 2019).

Here, neither party disputes that Movant used Watch Tower's works in the Dubtown Video to criticize, satirize, and comment on the practices of Jehovah's Witnesses, a manner that is fundamentally at odds with Watch Tower's original purpose for its videos—to *support* the work of Jehovah's Witnesses. (*Compare* Seymour Decl. ¶¶ 7, 8, 11 *with* Polidoro Decl. ¶ 3); *see also* 17 U.S.C. § 107 (expressly permitting fair use for the purposes of criticism and comment). "Moreover, the critical nature of [the Dubtown Video] is apparent from the broader context of [Movant's] YouTube Channel, where it was posted." *Hughes*, 437 F. Supp. 3d at 391 (citing *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 507 (S.D.N.Y. 2015) (finding the use of copied photographs transformative based on the surrounding context in which they were published)). In fact, Movant's other videos in his YouTube channel, like the Dubtown Video, all involve stop-frame Lego animations with titles that are derisive about the practices of Jehovah's Witnesses. (*See* Seymour Decl. ¶ 8, Ex. 5.)

It is well-established that "[a]mong the best recognized justifications for copying from another's work is to provide comment on it or criticism of it." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 215 (2d Cir. 2015), *cert. denied sub nom. The Authors Guild v. Google, Inc.*, 136 S. Ct. 1658 (2016). Indeed, the Second Circuit has held "there is a strong presumption that factor one favors the defendant if the allegedly infringing work fits the description of uses described in section 107," including "criticism" and "comment." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991*); see also TCA Television Corp. v. McCollum*, 839 F.3d 168, 179 (2d Cir. 2016) ("[T]he uses identified by Congress in the preamble to § 107—criticism, comment, news reporting, teaching, scholarship, and research—might be deemed 'most appropriate' for a purpose or

13

character finding indicative of fair use."); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004) ("Where the defendants' use is for the purposes of criticism [or] comment . . . factor one will normally tilt in the defendants' favor.") (internal quotation omitted).

But Watch Tower argues that the Dubtown Video is not transformative because it either displays unedited segments of its original works without much criticism or commentary, or merely ridicules its content by, for example, pointing out the presence of a green screen in the background for special effects or juxtaposing other sound recordings. (Resp. in Opp'n at 24.) While it is true that the Dubtown Video displays certain excerpts from Watch Tower's works in their original and unaltered states, physical changes are not required for a new use to be transformative. *See, e.g.*, *Katz v. Google, Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015) ("'The use of a copyrighted work need not alter or augment the work to be transformative in nature.'") (quoting *A.V. ex rel. Vanderhye v. iParadigms*, LLC, 562 F.3d 630, 639 (4th Cir. 2009)); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (work can be transformative with few physical changes to or comments on the original). "What matters is that [Movant] used the [works] to express 'something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 883 (quoting *Campbell*, 510 U.S. at 579). Needless to say, "a reasonable observer . . . would quickly grasp [the Dubtown Video's] critical purpose." *Hughes*, 437 F. Supp. 3d at 392.

However, regarding whether Movant created the Dubtown Video for commercial purposes, the Court agrees with Watch Tower that such use was commercial. While it is true that Movant asked for donations and did not monetize his channel at the time he posted the Dubtown Video (*see* Doe Decl. ¶¶ 8–9), the record also shows that Movant conceded to starting monetizing his channel on June 19, 2018 (*id.* ¶ 8) and that he promotes products, such as t-shirts and coffee mugs,

14

among other accessories, as part of a profit-making business (*see* Polidoro Decl., Ex. E, ECF No. 20-5). In other words, the record shows that Movant has been seeking to increase the viewership of his YouTube channel by posting videos that criticize and comment on the practices of Jehovah's Witnesses (like the Dubtown Video) to satisfy YouTube's viewership requirements for monetization, as well to market his accessories online. *See, e.g.*, *Northland Family Planning Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 979 (C.D. Cal. 2012) (holding that "[g]enerating traffic to one's website . . . using copyrighted material is within the type of 'profit' contemplated" by the first fair use factor); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000) (holding that website's use of copyrighted photographs was commercial in nature because they "were used in part to create an enticing lead page that would prompt readers to purchase the newspaper."). Thus, this sub-factor counts against a finding of fair use. However, because the use of Watch Tower's works was transformative, this sub-factor is of "less significance." *Blanch*, 467 F.3d at 254.

But the inquiry into the first factor does not end there. The Second Circuit has recognized that courts must also consider "the propriety of a defendant's conduct" as an additional sub-factor. *See NXIVM*, 364 F.3d at 478 (citations omitted). Here, there is no dispute that Movant obtained copies of Watch Tower's works from another YouTube user "who leaked the JW video prior to its official release." (Reply at 11.) "Thus, to the extent that [Movant] . . . knew that his access to the [copies] was unauthorized or was derived from a violation of law or breach of duty, this consideration weighs in favor of [Watch Tower]." *NXIVM*, 364 F.3d at 478.

At any rate, the Second Circuit has previously held that "a finding of bad faith is not to be weighed very heavily within the first fair use factor and cannot be made central to fair use analysis." *Id.* at 479 n. 2. In fact, based on the record before it, the "bad faith" finding here deserves

little to no weight. First, Watch Tower made its works freely available for download and redistribution from its website, which ultimately implies that Movant could have acquired the copyrighted works legitimately and free of cost. *See id.* at 478 (noting that "it has been considered relevant within [the subfactor of 'bad faith'] that a defendant could have acquired the copyrighted manuscript legitimately"). And second, Movant did not knowingly acquire the unauthorized copies "for the very purpose of preempting [Watch Tower's] first publication rights" or with the intention to supplant Watch Tower's "commercially valuable right of first publication." *Id.* at 478–79. Instead, as already discussed above, Movant's use of Watch Tower's works "was quite plainly critical and transformative." *Id.* at 479.

Therefore, in weighing the different sub-factors with the Dubtown Video's transformative nature, the Court concludes that the first factor moderately weighs in favor of fair use.

B. Nature of Copyrighted Work

The second fair use factor, the nature of the copyrighted work, "calls for recognition that some works are closer to the core of intended copyright protection than others," like works intended for "creative expression for public dissemination." *Campbell*, 510 U.S. at 586. Applying this factor, courts consider "(1) whether the [copyrighted] work is expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch*, 467 F.3d at 256 (quotations omitted). The second fair use factor, however, "may be of limited usefulness where the creative work of art is being used for a transformative purpose." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006); *see also Campbell*, 510 U.S. at 586 (explaining that the nature of the

copyrighted work is "not much help . . . in separating the fair use sheep from the infringing goats in a parody case, since parodies almost invariably copy publicly known, expressive works").

Here, the second fair use factor weighs slightly against fair use. As for the first *Blanch* consideration, Watch Tower's works are "factual or informational" in that they are mostly religious, educational, and informational in nature, but they also have some "expressive or creative" value in its performances and production. *Blanch*, 467 F.3d at 256 (internal quotation marks omitted). With respect to the second *Blanch* consideration, it is undisputed that all of Watch Tower's works were unpublished at the time Movant used them to create the Dubtown Video, which weighs slightly against fair use. *Id.* (internal quotation marks omitted). Hence, in weighing the *Blanch* considerations, the second fair use factor weighs slightly against Movant.

      C.      Amount and Substantiality Used

The third statutory fair use factor turns on "whether 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole' . . . [is] reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (quoting 17 U.S.C. § 107). In assessing this factor, the Court considers "not only 'the quantity of the materials used' but also 'their quality and importance.'" *TCA Television*, 839 F.3d at 185 (quoting *Campbell*, 510 U.S. at 587). "The crux of the inquiry is whether 'no more [content] was taken than necessary,'" given the purpose and character of the allegedly infringing use. *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 98 (2d Cir. 2014) (quoting *Campbell*, 510 U.S. at 589); *see also Bill Graham Archives*, 448 F.3d at 613 ("[T]he third-factor inquiry must take into account that . . . the extent of permissible copying varies with the purpose and character of the use." (internal quotation marks omitted)). Thus, the third factor may favor the alleged infringer even where he copies an entire work, provided that such copying was reasonably necessary in relation to the work's transformative purpose. *See, e.g.*,

*Authors Guild*, 755 F.3d at 98–99; *see also, e.g.*, Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., 756 F.3d 73, 90 (2d Cir. 2014) (concluding that the third fair use factor was neutral where an entire work was copied).

Here, the thirteen-minute Dubtown Video uses different percentages of Watch Tower's works, some more substantially than others. However, when considering that four of Watch Tower's works amount to around thirty-two minutes and a half and the JW Video (a compilation of those four with additional footage) amounts to around fifty-three minutes, together with the fact that the Dubtown Video uses such excepts solely to parody, criticize, and comment, the Court concludes that the third factor favors fair use. *See Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 46 (S.D.N.Y. 2017) (where intent of new work was to critique and parody the original, new work's use of 60 percent of video footage from original was fair). Also, Movant interjects, superimposes, and overdubs parodic commentary and music over the excerpted footage, which further weighs in his favor. *See, e.g.*, *Blanch,* 467 F. 3d at 248, 257-58 (doctoring of original photograph decreased substantiality of use); *NXIVM*, 364 F.3d at 481 (portion of original worked used was not excessive because all excerpted portions were relevant to defendants' analysis and critical commentary); *Yang*, 405 F. Supp. 3d at 546-47 (cropping of photograph weighed in favor of defendant on fair use inquiry).

D. <u>Effect of the Use Upon the Potential Market</u>

Finally, the fourth fair use factor concerns "whether the secondary use usurps the market of the original work." *Blanch*, 467 F.3d at 258 (quoting *NXIVM*, 364 F.3d at 482). An infringer usurps the original work's market when his "target audience and the nature of the infringing content is the same as the original." *Cariou*, 714 F.3d at 709. Thus, "[t]he more transformative the

secondary use, the less [the] likelihood that the secondary use substitutes for the original." *Castle Rock Entm't,* 150 F.3d at 145.

Here, the record shows that there is no danger that the Dubtown Video will usurp the market for which Watch Tower intends its works. If anything, the record shows that the transformative nature of the Dubtown Video—namely, to criticize, satirize, and comment on the practices of Jehovah's Witnesses—is clearly not the same as Watch Tower's target audience. *See Cariou*, 714 F.3d at 709. "Moreover, although [the Dubtown Video] is comprised entirely of portions of [Watch Tower's works], there is no reason to think that [Watch Tower's] audience will abandon [the JW website] to watch the derisively-titled ["DUBTOWN – Family Worship July Broadcast"] on a [stop-frame Lego animation] YouTube channel simply because it contains parts of [its] work[s]." *Hughes*, 437 F. Supp. 3d at 394. Thus, the fourth fair use factor strongly favors Movant.

Overall, three of the four statutory fair use factors favor Movant, including the most important factor (purpose and character of use), while the least important factor (nature of the copyrighted work) only weighs slightly against Movant. Therefore, the record establishes that Movant made fair use of Watch Tower's works. Consequently, Movant did not infringe Watch Tower's copyrighted works, and there is no basis under the DMCA for a subpoena to compel disclosure of his identity. "This is not a matter of limiting disclosure to outside counsel only, but that disclosure is not permitted at all under the law." *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 887. Accordingly, the motion to quash is granted.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Movant's motion to quash the June 19, 2018 subpoena issued under the above-captioned case. The Clerk of Court is directed to terminate the motion at ECF No. 17.

Dated: January 18, 2022
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge